JAMES N. HELLER & another vs. SILVERBRANCH
CONSTRUCTION CORPORATION & others.

Norfolk. September 15, 1978. — November 14, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Consumer Protection Act*, Unfair act or practice, Damages, Attorney's
fees. *Damages*, Attorney's fees, Consumer protection case.

In an action brought pursuant to G. L. c. 93A, alleging defects in a
parcel of real property sold by a construction company to the plain-
tiffs and misrepresentations made by the company which induced
the plaintiffs to purchase the property, the judge's findings that the
president of the corporation was authorized to enter into an agree-
ment with the plaintiffs for the sale of the property and to make
representations concerning the property and that his failure to
disclose a drainage problem violated par. XV of the Attorney Gen-
eral's Rules and Regulations, 20 Code Mass. Regs., Part 5, at 39-40,
and c. 93A, § 2, were amply supported by the record. [624–627]
In an action brought pursuant to G. L. c. 93A, alleging defects in a
parcel of real property sold by a construction company to the plain-
tiffs and misrepresentations made by the company which induced
the plaintiffs to purchase the property, there was ample evidence
to support the judge's finding that the company's refusal to grant
relief on demand was made in bad faith with knowledge or reason
to know that the practice complained of violated c. 93A, § 2, and it
was therefore appropriate for the judge to award the plaintiffs
multiple damages pursuant to § 9 (3). [627–628]
In awarding attorney's fees pursuant to G. L. c. 93A, § 9 (4), a judge
was not required to take evidence as to the amount of time expend-
ed by the attorney or the attorney's usual charge. [628–631]

CIVIL ACTION commenced in the Superior Court on May
22, 1975.

The action was heard by *Byron, J.*, a District Court
judge sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

The case was submitted on briefs.

*Robert D. Epstein* for the plaintiffs.

*Frederick T. Iddings, Jr.*, for Silverbranch Construction Corporation.

HENNESSEY, C.J. The plaintiffs, James and Ileen Heller, brought this action under G. L. c. 93A, §§ 2, 9, against Silverbranch Construction Corporation (Silverbranch) and Gordon and Lena Earle, doing business as Earle and Earle Realty (brokers). The complaint alleged defects in a parcel of real property sold by Silverbranch to the plaintiffs and misrepresentations made by the brokers and Silverbranch which induced the plaintiffs to purchase the property. After trial without a jury, the trial judge entered judgment for the brokers as against the plaintiffs and for the plaintiffs as against Silverbranch in the amount of $11,080, plus $1,000 attorney's fees, interest, and cost.

Silverbranch appeals, arguing (1) that it cannot be held liable under G. L. c. 93A for defects in the lot conveyed when the buyers have accepted a deed in full satisfaction of a purchase and sale agreement, when Silverbranch has committed no fraud, and when there is insufficient evidence to support a finding of negligence; (2) that, even if Silverbranch is liable, it is not liable for multiple damages under c. 93A, § 9 (3); and (3) that the judge erred in awarding attorney's fees in the absence of evidence concerning the amount of time expended by the attorney and the rate and reasonableness of his charge. This court, on its own motion, ordered direct appellate review. We find no merit in the contentions Silverbranch sets forth on appeal. Accordingly, we affirm the lower court's judgment.

We summarize the facts as found by the judge. The Hellers came to Massachusetts from Illinois in the summer of 1973 for the purpose of purchasing a home. Someone referred them to a real estate firm known as Earle and Earle Realty. Their contact with the firm was supposedly through a Mrs. Glazer, whose position with the

firm, if any, the evidence did not disclose. Mrs. Glazer escorted the Hellers through several different communities and showed them various houses which were being offered for sale. On arriving at one site, the Hellers observed running water on the property and informed Mrs. Glazer that they were not interested in property that had any water on it whatsoever.

The next piece of property that the Hellers visited is the subject matter of the present suit. The property was owned, and the house had been constructed, by Silverbranch. The Hellers' first visit to the property took place in late August of 1973, at which time the property was dry. Within a few days, they decided to enter into a purchase and sale agreement. Immediately before signing the agreement, Mrs. Heller asked Robert Silberzweig, president of the defendant corporation, if there was good drainage on the land. He replied that there was. After executing the agreement, the Hellers returned to Illinois.

On October 3, 1973, James Heller returned to Massachusetts for the purpose of closing the transaction. Prior to attending the closing, he visited the property to see if everything was in order. As far as he could determine, the property was dry and appeared "pretty much the same" as it had in late August.

On December 10, 1973, the Hellers moved to Massachusetts. On their arrival, they noticed standing water beginning approximately twenty feet from the rear of the house and extending the length between the sidelines of their lot. The diameter of the water varied between twenty and thirty feet, its deepest portion being approximately one foot. The Hellers immediately called Silberzweig for an explanation. He came to the property, acknowledged that there was a drainage problem, and informed the Hellers that he did not intend to do anything about it as they had already purchased the property. When asked why he did not mention the water at the time that the agreement was signed, he expressed his unwillingness to discuss the matter further and left. The

Hellers attempted to contact him sometime later, but again he refused to talk.

There was no evidence to suggest that Mrs. Glazer was aware of the drainage problem until told of it by the plaintiffs on December 10, 1973. Nor was there any evidence that the brokers knew of the problem. However, Silberzweig had been aware that water was not draining from the property since at least the early part of 1973. At that time, he spoke with one Vincent Mirabile, a contractor, concerning the work that would be necessary to correct the problem and the cost that the correction would entail.

Early in 1974, the Hellers contacted Mirabile. His familiarity with what needed to be done stemmed not only from his prior conversation with Silberzweig, but from his having filled in the lot before the house was constructed. The Hellers retained Mirabile to install the requisite drainage pipes. The fair value of his services is $5,540.

The Hellers sent written demands for relief to both Silverbranch and the brokers pursuant to G. L. c. 93A, § 9 (3). The letters described the unfair acts and practices relied on by the Hellers and the damages they suffered. Silverbranch admitted at trial that it made no offer or counteroffer of settlement. Sometime thirty days after their demands were sent, the Hellers brought the instant action.

1. *Silverbranch's Liability under c. 93A.*

Chapter 93A of the General Laws is a statute of broad impact whose basic policy is to ensure an equitable relationship between consumers and persons engaged in business. *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72 (1977). *Commonwealth* v. *DeCotis*, 366 Mass. 234 (1974). Section 2, the substantive heart of c. 93A, makes "unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful.[1] G. L. c. 93A, § 2 (*a*), inserted by

---

[1] Section 2 makes "[u]nfair methods of competition" unlawful as

St. 1967, c. 813, § 1. The Legislature directed courts of this Commonwealth to two sources for guidance in interpreting this language: first, Federal Trade Commission (FTC) and Federal court interpretations of § 5 (a) (1) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a) (1) (1970); and, second, rules and regulations promulgated by the Attorney General of this Commonwealth, which are consistent with FTC and Federal court interpretations of the FTCA. G. L. c. 93A, § 2 (b) and (c).

Silverbranch contends, at the outset of its argument, that c. 93A should not automatically render a buyer's disappointment the source of an enforceable legal right. Noting the Legislature's intention to have c. 93A interpreted in a manner consistent with the FTCA, Silverbranch relies on dicta in *FTC* v. *Sinclair Ref. Co.*, 261 U.S. 463 (1923), to support its contention. In that case, the Supreme Court stated that the Federal statute gives "no general authority to compel competitors to a common level, to interfere with ordinary business methods or to prescribe arbitrary standards for those engaged in the conflict for advantage called competition." *Id.* at 475-476. Although we feel compelled to point out that *Sinclair* is a fifty-five year old opinion having nothing to do with the case before us,[2] we do not necessarily dispute its broad observations. However, we are unpersuaded by the defendant's suggestion that affording the Hellers relief in the instant case would render c. 93A a repository of legal rights arising from no more than disappointment of consumers.

The defendant's entire theory of nonliability is predicated on arguments relevant exclusively to the common law. As a result, the defendant points out that it commit-

well. However, that language of the statute is inapposite to the instant suit.

[2] *Sinclair* involved unfair methods of business competition and was written before the FTCA was amended in 1938 to include "unfair or deceptive acts or practices."

ted no fraud, violated no warranties, is free from contrac-
tual liability because of a "waiver by acceptance of deed"
clause in the purchase and sale agreement, and cannot be
found negligent because there is no evidence to support
such a finding. However, whether Silverbranch would be
liable under any of these theories is not the question
before this court. The plaintiffs claim a violation of c. 93A
and, in directing its attention solely to common law theo-
ries, Silverbranch has ignored years of precedent perti-
nent and unfavorable to its present appeal. Both this
court and the Supreme Court have consistently held that
consumer protection statutes created new substantive
rights by making conduct unlawful which was not previ-
ously unlawful under the common law or any prior stat-
ute. The statutory language is not dependent on tradi-
tional tort or contract law concepts for its definition. See
*Dodd* v. *Commercial Union Ins. Co., supra; Slaney* v. *West-
wood Auto, Inc.,* 366 Mass. 688 (1975); *Commonwealth* v.
*DeCotis, supra; Reilly* v. *Pinkus,* 338 U.S. 269 (1949); *FTC*
v. *Algoma Lumber Co.,* 291 U.S. 67 (1934). Thus, our
determinations are not aided by the defendant's review of
the various common law theories under which it might
have escaped liability. Rather, the existence of unfair or
deceptive acts or practices must be determined in light of
the policy surrounding c. 93A and from the circum-
stances inhering in each case. With this in mind, we now
turn to the relevant issues before us.

The judge concluded that Silberzweig was authorized
by Silverbranch to enter into an agreement with the Hell-
ers for the sale of the property in question and to make
representations concerning that property. The judge also
concluded that Silberzweig's failure to disclose the drain-
age problem violated par. XV of the Attorney General's
Rules and Regulations, 20 Code Mass. Regs., Part 5, at
39-40,[3] and G. L. c. 93A, § 2. We have reviewed the record

---

[3] Paragraph XV provides in part: "Without limiting the scope of any
other rule, regulation or statute, an act or practice is a violation of

and find ample support for the judge's conclusions. Consequently, we affirm the judgment concerning Silverbranch's general liability.

2. *The Award of Multiple Damages.*

Under G. L. c. 93A, § 9 (3), a demand letter describing the specific unfair practices claimed and listing the damages suffered is a prerequisite to suit and must be alleged and proved. *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812 (1975). Any person receiving a demand letter may make a written offer of settlement within thirty days, thereby limiting his damages to the relief tendered, if the court finds the tender to have been reasonable. The Hellers sent such a demand for relief. However, Silverbranch made no offer of settlement. In such circumstances, c. 93A, § 9 (3), authorizes the judge to award up to three, but not less than two, times the amount of actual damages if he finds a wilful or knowing violation of c. 93A, § 2, or that the refusal to grant relief on demand was made in bad faith with knowledge or reason to know that the practice complained of violated § 2.

The first of these preconditions requires little explanation. It is directed against callous and intentional violations of the law and permits recovery of multiple damages on a showing that the defendant wilfully or knowingly employed an unfair or deceptive practice. See Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L.Q. 307, 318 (1969).[4] The second is an attempt to promote prelitigation settlements by making it unprofitable for the defendant either to ignore the plaintiff's request for relief or to bargain with the plaintiff with respect to such relief in bad faith. The

---

Chapter 93A, Section 2 if: A. It is oppressive or otherwise unconscionable in any respect; or B. Any person or other legal entity subject to this act fails to disclose to a buyer or prespective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction . . . ."

[4] David A. Rice was the principal draftsman of § 9 of c. 93A.

knowledge or reason to know is that which exists after receipt of the complaint and not at the time of the alleged violation. The standard is objective and requires the defendant to investigate the facts and consider the legal precedents. Thus, the consumer should be prepared to offer as evidence of reason to know the existence of relevant precedents or rules and regulations. See Rice, *supra* at 319.

The judge in the instant case concluded that Silverbranch's nondisclosure was a wilful and knowing violation of § 2. He also concluded that Silverbranch's refusal to grant relief on demand was made in bad faith with knowledge or reason to know that the practice complained of violated § 2. Our review of the record reveals ample support for the judge's latter finding. The plaintiffs' complaint and demand letter specifically set out the text of § 2 and par. XV of the Attorney General's Rules and Regulations. Moreover, the plaintiffs explained in great detail exactly how the defendant corporation, through the actions of its president, violated those provisions. In light of the judge's findings of fact, findings which we as an appellate court are not inclined to disturb, we conclude that Silverbranch forced the plaintiffs to litigate their claim when it not only had reason to know but had actual knowledge of the unlawfulness of its acts. Such conduct is precisely the type that § 9 (3) was designed to deter, and the judge's award of multiple damages was the appropriate punishment.

Because the requirements of § 9 (3) are framed in the disjunctive, and because we agree with the judge's conclusions regarding the defendant's bad faith in refusing to settle, we do not reach the issue whether there was a wilful and knowing violation.

3. *The Award of Attorney's Fees.*

Silverbranch's final argument challenges the validity of the judge's award of attorney's fees in the absence of independent proof as to the amount of time expended by the attorney and the rate and reasonableness of his

charge.[5] Silverbranch cites two cases, *Cummings* v. *National Shawmut Bank*, 284 Mass. 563 (1933), and *McLaughlin* v. *Old Colony Trust Co.*, 313 Mass. 329 (1943), in support of its contention. It is our opinion that the cases cited are inapposite and that the argument lacks merit.

General Laws c. 93A, § 9 (4), directs the trial judge in a § 9 action to award reasonable attorney's fees and costs to the plaintiff if the judge finds in the plaintiff's favor.[6] In such circumstances, where the award is provided for by statute and is assessed against the party having no contractual relationship with the attorney involved, the standard of reasonableness depends not on what the attorney usually charges but, rather, on what his services were objectively worth. See *Dillon's Case*, 324 Mass. 102, 113 (1949). Absent specific direction from the Legislature, the crucial factors in making such a determination are (1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney. See *Hayden* v. *Hayden*, 326 Mass. 587 (1950). Cf. G. L. c. 149, § 29, discussed at note 7 *infra*. A judge presiding over the action for which the plaintiff seeks reasonable attorney's fees has ample opportunity to acquire firsthand knowledge of all these factors. He thus can discern, from his own experience as a judge and expertise as a lawyer, the amount that the attorney should be paid. Indeed, even this court

---

[5] The judge awarded $1,000 for "attorney's fees ..., interest and costs." Since the record discloses no specific amount of costs or interest calculated, or even the legal basis on which interest could be assessed, we have assumed here that the entire amount of $1,000 was assessed as attorney's fees.

[6] There is one exception to this general rule. Section 9 (4), inserted by St. 1969, c. 690, provides that "the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer of settlement made within thirty days of the mailing or delivery of the written demand for relief required by this section." Given that Silverbranch made no offer of settlement at all, this exception has no relevance to the present case.

has reviewed such awards on the basis of a sufficiently informative record and reversed or revised when the amount is clearly incommensurate with an objective e-valuation of the services performed. See *Hayden* v. *Hayden, supra; Dillon's Case, supra.* Cf. *Smith* v. *Smith*, 361 Mass. 733 (1972); *Bailey* v. *Smith*, 214 Mass. 114 (1913).

The awards at issue in both *Cummings* and *McLaughlin*, the two cases cited by Silverbranch, did not arise in the circumstances described above. *Cummings* involved a suit for fees brought by an attorney under the common law. *McLaughlin* involved a suit for fees brought by an attorney under G. L. c. 215, § 39, which provides an alternative to suit at common law when the defendant in the action is an executor of an estate for whom the attorney has worked. There are two reasons for requiring a separate evidentiary hearing or trial in cases such as those. First, they very often involve parties who allegedly have entered into a contractual relationship. Consequently, the validity and terms of their purported contracts must be ascertained. Second, the actions are typically brought before a judge who had nothing to do with the initial suit or services for which payment is claimed. As a result, without a separate hearing or trial, he would have no way of intelligently deciding the appropriate amount to award. See *Boynton* v. *Tarbell*, 272 Mass. 142 (1930). Cf. *Serlin* v. *Rotman*, 371 Mass. 449 (1976).

The circumstances of the instant case distinguish it from those in which the necessity for an evidentiary hearing or trial has arisen. In directing the judge to award reasonable attorney's fees in a c. 93A, § 9, action, the Legislature listed no specific facts requiring independent proof.[7] From this, we conclude that the judge is to rely on

---

[7] For a statute that does require the judge to consider specific factors, beyond those that he can ascertain from observing the trial conducted before him, see G. L. c. 149, § 29. That statute, as amended through St. 1972, c. 774, § 5, reads in part as follows: "A decree in favor of any claimant under this section shall include reasonable legal fees based upon the time spent and the results accomplished as approved

his firsthand knowledge of the services performed before him. Thus, we conclude that the judge in the instant case acted properly in awarding the Hellers attorney's fees, notwithstanding the absence of evidence concerning time spent and the attorney's usual charge. Moreover, our reading of the record reveals no arbitrariness or injustice in the amount of the award.

*Judgment affirmed.*

---

by the court and such legal fees shall not in any event be less than published rate of any recommended fee schedule of a state-wide bar association or of a bar association in which the office of counsel for claimant is located, whichever is higher." Because the Legislature specifically delineated the items to be taken into account in establishing the reasonableness of attorney's fees under § 29, and because those items are necessarily beyond the judge's personal knowledge, this court has held that a defendant in a § 29 action who makes a proper request is entitled to an evidentiary hearing on the matter. See *Manganaro Drywall, Inc.* v. *White Constr. Co.*, 372 Mass. 661, 666 (1977). In *Manganaro*, the defendant failed to make such a request, and the plaintiff filed sufficient substantiating material by way of affidavit and records for the judge to conclude that the fee requested was reasonable. Thus, this court upheld the award.