**COMPUTER SYSTEMS ENGINEERING, INC., Plaintiff,**

v.

**QANTEL CORPORATION, Defendant.**

**Civ. A. No. 79–1588–K.**

United States District Court, D. Massachusetts.

Aug. 30, 1983.

**1380**

Thomas K. Christo, Christo & Watson, North Hampton, N.H., for plaintiff.

Ropes & Gray, Thomas G. Dignan, Jr., Roscoe Trimmier, Boston, Mass., for defendant.

### Memorandum and Order

KEETON, District Judge.

In this action, the jury found for plaintiff, Computer Systems Engineering ("CSE") on claims of breach of contract (Count I) and fraud (Count II) and against defendant, Qantel Corporation ("Qantel"), on a counterclaim for payment for goods delivered. CSE's M.G.L. ch. 93A claim (Count VII) was tried to the court, and double damages were awarded. *See* Opinion of July 8, 1983. Qantel moves for judgment n.o.v., new trial and remittitur. Qantel also requests subsidiary findings of fact on Count VII, pursuant to Fed.R.Civ.P. 52(b). Plaintiff requests an award of prejudgment interest and attorney fees.

I make additional findings of fact in support of my award of double damages to CSE on its ch. 93A claim (Count VII) in Part I, *infra.* All remaining issues are addressed in Parts II–X, *infra.*

[Only Parts VIII–X are here published.]

### VIII.

■ I grant Qantel's motion for judgment n.o.v. on Qantel's counterclaim. The parties stipulated at trial that Qantel delivered goods and services with a total list price of $35,153.30 during the period June 15, 1978 through October 15, 1978, which amount was not paid by CSE. These charges for goods and services delivered did not include the cost of Qantel software, provided free to CSE, or the allegedly defective Model 210 computer, delivered to CSE on May 2, 1978. The jury was instructed that "a prior breach [of contract] does not entitle a party thereafter to accept goods and services without paying for them."

The analogous case of *C.R. Bard, Inc. v. Medical Electronics Corp.,* 529 F.Supp. 1382 (D.Mass.1982) is instructive on this issue. There, the court found that alleged breach of a distributorship agreement did not provide a defense to a contract claim for sale of goods governed by the U.C.C. as incorporated in Massachusetts law. *Id.* at 1386–87. A buyer should not be allowed to delay payment for goods accepted by asserting "a remote breach of contract" relating largely to termination of the distributorship agreement where "there is no hint that the seller acted improperly in any way regarding the actual sale or delivery of the goods." *Id.* at 1387. In *Bard,* as in this case, the distributorship agreement was governed by California law, but the parties apparently relied on Massachusetts precedents as providing applicable precedent. *Id.* at 1386 n. 2. Moreover, as the court noted, California and Massachusetts have both adopted the relevant U.C.C. provisions. *Id.* Massachusetts precedent indicates that claims arising from termination of a distributorship agreement are available only as an offset against a claim for goods sold and delivered after termination of the agreement. *See Acme Engineering & Manufacturing Corp. v. Airadyne Co.,* 9 Mass.App. 762, 404 N.E.2d 693 (1980). CSE claims, however, the termination of the distributorship agreement rendered worthless the goods and services delivered. A similar defense was asserted in *Gutor International AG v. Raymond Packer Co.,* 493 F.2d 938 (1st Cir.1974), where the defendant sought to show that purchase of certain machines was so bound up with the future of its franchise that cancellation of the franchise entitled the defendant to withhold payment. The First Circuit observed there that "[t]he point is not entirely

specious," since "[d]iscontinuance of the distributorship agreement might well have left [defendant] without incentive to sell or service the machines." *Id.* at 943. The court in *Gutor,* nevertheless, rejected this defense because the defendant failed to pursue its remedies under the U.C.C. in a timely manner, and thereby forfeited any right to treat the alleged breach as a defense to nonpayment. Both *Gutor* and *Bard* appear to be precisely in point, and require denial of CSE's asserted defense for nonpayment due to breach of contract and fraud.

Accordingly, Qantel's motion for judgment n.o.v. on its counterclaim is granted. Since the parties did not offer evidence on any figure other than the total list price, I award Qantel the amount of $35,153.30, the total list price stipulated by the parties.

## IX.

■ With respect to attorney fees to be awarded under the ch. 93A claim, the issue before me is not what fee is to be paid by plaintiff to plaintiff's attorneys but instead what amount defendant must pay to plaintiff on account of attorney fees. Plaintiff's trial attorneys were engaged by plaintiff under a one-third contingent fee contract, after plaintiff had previously paid attorney fees to predecessor counsel who had filed the action and engaged in some discovery. The plaintiff and its present attorneys were, of course, entirely free to enter into such a contract, which provides not for payment of a sum that is meant to be fair and reasonable compensation for services rendered, regardless of outcome, but instead provides for a percentage of recovery that will almost certainly be a substantially greater sum in the event of a favorable outcome, and nothing in the event of a wholly adverse outcome. In contrast, the fees to be awarded to plaintiff as a part of the judgment against the defendant, under Massachusetts law, are to be in an amount equal to what the "services were objectively worth." *Heller v. Silverbranch Construction Co.,* 376 Mass. 621, 629, 382 N.E.2d 1065, 1071 (1978). In making this determination a trial judge "is to rely on his first-

hand knowledge of the services performed before him," *id.* at 630–31, 382 N.E.2d at 1072. As indicated in the Opinion of July 8, 1983, at 26, however, I do not read this as a mandate forbidding the trial judge from receiving evidence. Rather, in order that my decision might be better informed, I have invited and considered written submissions of the parties providing, among other things, information about hours expended by plaintiff's attorneys and their paralegal assistants. This way of proceeding is consistent with other Massachusetts precedent for taking into account

> the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.

*Linthicum v. Archambault,* 379 Mass. 381, 388–89, 398 N.E.2d 482, 488 (1979).

Hours reasonably spent by plaintiff's attorneys and their paralegal through July 18, 1983 were as stated in the table below. Taking into account the nature of this case and the issues presented (involving factual complexities distinctive to computer-related business ventures) and Mr. Christo's experience and exceptional qualifications as counsel in such litigation as well as customary hourly rates in this area for skilled trial counsel, I find that $200 is an appropriate hourly base rate applicable to Mr. Christo's services. The nature and complexity of the case warranted in-court use of associate counsel. Mr. Watson participated in this role, including examination of witnesses to some extent. Taking into account his experience in the field of computer-related legal problems, I find that $150 is an appropriate hourly base rate applicable to his services. I find $40 to be an appropriate hourly base rate applicable to paralegal services.

The representation of plaintiff in this case was of exceptionally meritorious quality. The case involved a specialized subject matter as to which Mr. Christo and Mr. Watson were distinctively qualified by ex-

perience. Taking these factors into account as well as the amount at stake in the litigation, I conclude that it is appropriate to increase compensation to some extent above what I have determined to be the applicable base rate. I find no support in Massachusetts law, however, for taking into account uncertainty about whether any attorney fee would be paid, regardless of whether plaintiff's attorney has been engaged under a contingent fee contract. Also, taking that factor into account would be somewhat at odds with determining what the "services were objectively worth"—the standard stated in *Heller*. On the basis of the other factors discussed above, and disregarding uncertainty about whether an attorney fee would be paid, I find that it is appropriate to apply a multiplier of 1.25 to the figures calculated at base rate in order to arrive at a figure fairly representing what the "services were objectively worth."

I find also that it is appropriate to award fees for the services of predecessor counsel to the extent that plaintiff has shown that those fees were paid for services attributable to this case. The reasonableness of the amount billed and paid is not challenged. Defendant does object, however—and I sustain the objection—to charges, in an amount of $5,541.41, for fees and disbursements not shown to be attributable to this case. Deducting this amount from the total billed and paid ($37,666.41), I find that $32,125 should be awarded as attorney fees for services of predecessor counsel.

Calculation of the award in accordance with these findings is as follows:

| | Hours | Rate | Base Figure | Multiple | Adjusted Figure |
|---|---|---|---|---|---|
| Mr. Christo | 613.6 | $200 | $122,720 | 1.25 | $153,400 |
| Mr. Watson | 285.0 | 150 | 42,750 | 1.25 | 53,437.50 |
| Paralegal | 561.25 | 40 | 22,450 | 1.25 | 28,062.50 |
| | | | | | 234,900.00 |
| | | | Services of predecessor counsel | | 32,125 |
| | | | | Total | $267,025 |

This amount ($267,025) is to be included in the final judgment to be entered forthwith by the clerk. A supplemental award will be due for services rendered after July 18, 1983. The right to compensation for attorney fees may extend to fees for services rendered after judgment, as well as services rendered after July 18, 1983 and before entry of judgment. If the parties cannot reach agreement with respect to additional attorney fees for time reasonably spent after July 18, 1983, plaintiff may file a timely post-judgment request for a further award for those services.

## X.

■ A tentative resolution of issues relating to prejudgment interest was presented in a Procedural Order of July 29, 1983, as follows:

> As to CSE's claim for interest, it is my tentative view that the judgment to be entered in this case after all outstanding issues are resolved should provide for interest from date of verdict to date of judgment on the sum found by the jury to be compensatory damages. Massachusetts law, applicable at least to the fraud claim, would have provided for interest from an earlier date but for the problem, adverted to in the conference, that evidence of damages on which the verdict was based included interest factors. The risk of double recovery of interest was terminated, however, on the date of the verdict. Thus interest should be allowed under Massachusetts law from the date of verdict to the date of judgment, when 28 U.S.C. § 1961 becomes applicable. I conclude that the rate of such interest should be 12 per cent—the rate fixed by Mass.Acts 1982, ch. 183. Once the judgment is entered, the entire amount of the judgment will bear interest in accordance with 28 U.S.C. § 1961. If either party opposes the resolution of interest in this

way, a memorandum on this matter shall be submitted simultaneously with other submissions filed pursuant to this procedural order.

Plaintiff presses a claim for pre-verdict interest. I reject this claim both for untimeliness and for lack of merit.

As to untimeliness, during conferences on the charge I explicitly called attention to the lack of any requests for interrogatories or instructions on pre-verdict interest and to my concern that it would be difficult and perhaps impossible to formulate appropriate interrogatories and instructions that would avoid duplicative recovery in view of the way in which expert testimony on damages had made use of interest factors. See Transcript, Vol. VIII, pp. 130–136. No request was thereafter made by either party for modification of the interrogatories to take account of the problems related to interest, and no objection was lodged to the charge because of its impact on any claim for pre-verdict interest. It was thus my understanding that if not stipulating, counsel were at least acquiescing in my submission of the case on the understanding that counsel would be free to argue pre-verdict interest claims as factors in the damages findings to be made by the jury and that no preverdict interest would be allowed on those findings upon the entry of judgment on the verdict. In these circumstances, I conclude that plaintiff's request at this time that the court award pre-verdict interest on the damages as found by the jury is barred as untimely.

On the merits, as well, I must reject plaintiff's claim for pre-verdict interest. Plaintiff argues that out-of-pocket interest paid by CSE on loans obtained to carry operational losses is an element of pecuniary damage distinct from and not duplicative of pre-verdict interest allowable under Massachusetts law and that plaintiff's lost profits claim did not include an interest factor. These arguments may have a surface, semantic appeal, but they fail to take account of the fact that interest is, by nature, an allowance for the time value of money, and awarding both interest and any

other form of allowance for the time value of money is inherently duplicative. In the present case, for example, the financing of CSE's operations as a Qantel distributor involved both investment of CSE's own capital and investment of borrowed funds. The factor of time value of money is relevant both to the contributed capital and to the borrowed funds. Thus, it may be argued that in a multi-year loss projection such as was presented by plaintiff's expert witness—both as to out-of-pocket losses and as to lost profits—losses in one year impair equity otherwise available to reduce debt. In turn, this results in higher interest paid on debt in each succeeding year. A further consequence is even greater lost profits in each succeeding year. I do not determine the merits of this illustrative argument. Rather, the point is that, having chosen to prove damages as it did, plaintiff has not met the burden of disentangling duplicative elements of its claim for the time value of money. Thus, it cannot now be determined that either the expert witness or the jury did not in any way consider interest on losses, or some other allowance for the time value of money, in projecting out-of-pocket losses and lost profits through several years. Put another way, the point is that factors related to the time value of money are intermingled with other factors in the evidence offered on damages in such a way that the court cannot now determine that any allowance of pre-verdict interest could be made without duplication of elements within the jury findings. In these circumstances, plaintiff's request for allowing interest on the entire finding must be denied because such an allowance would almost certainly be duplicative to some extent. Nor can any lesser allowance be made, since plaintiff has advanced no basis upon which a nonduplicative allowance could be determined.

For these reasons, plaintiff's claims for pre-verdict interest are denied. In accordance with Mass.Acts 1982, ch. 183, interest at the rate of 12 per cent per annum on the amount found by the jury as com-

pensatory damages will be allowed from date of verdict to date of judgment.

## ORDER

In conformity with the foregoing rulings, judgment will be entered for plaintiff in an amount calculated by the Clerk, on the date of entering judgment, in the following way:

| | | |
|---|---|---|
| (a) | Compensatory damages | $2,336,742 |
| (b) | Added damages from doubling under the ch. 93A claim | $2,336,742 |
| (c) | Attorney fees | $ 267,025 |
| | Subtotal | $4,940,509 |
| (d) | Offsetting damages awarded on counter-claim | $ 35,153.30 |
| | Net before interest | $4,905,355.70 |
| (e) | Interest on (a) at 12% from date of ver-dict to date of judgment | $_____ |
| | Amount of judgment | $ |