Lauriat, J.
Disque D. Deane (“Deane”), brought this action against Snelling & Snelling Personnel Services (“Snelling”), for negligence, breach of contract, and •violations of G.L.c. 93A, arising out of Snelling’s allegedly failed placement of a nanny/housekeeper in Deane’s home in Boston, Massachusetts.[1]
The court tried this action without a jury on April 3 and 4, 1997. It heard testimony from Deane, his wife Carol Deane, Peter Teel, Edward Diamond and Fredrick Cabral. The court also received into evidence 13 Exhibits. Upon consideration of the credible testimony of the witnesses and the exhibits, and the reasonable inferences to be drawn therefrom, as well as the post-trial submissions of the parties and the oral arguments of counsel, the court makes the following findings of fact, rulings of law, and order for judgment in this action.
FINDINGS OF FACT
Deane, a retired New York investment banker, along with his wife Carol Deane and their two children, moved to 14 Walnut Street on Beacon Hill in Boston in the summer of 1994. In connection with that move, the Deanes decided to hire a nanny/housekeeper to assist their full-time nanny in caring for their children and the Walnut Street house.
In June of 1994, Deane contacted Snelling, a personnel agency he had used previously for bondable personnel, to secure a nanny/housekeeper. Snelling *434 represented itself as being in the business of placing individuals in private homes as domestic help. Deane spoke to Edward Diamond (“Diamond”), the owner of Snelling, and Frederick Cabral (“Cabral”), a counsellor there, about his requirements. Deane described the position, spoke of his need for an experienced and well-educated person, and stated that Snelling would have to conduct a police/background check on, as well as a check of all references for any candidate, because he was concerned about the background of any individual who would care for his children and work in his home.
Although Diamond told Deane that Snelling could not conduct a criminal background check because to do so would violate Massachusetts law, he did not advise Deane that Snelling’s policy was not to make any inquiry into the background of any candidate, nor verify any information provided by the candidate, nor check any references given by the candidate. Deane and Snelling agreed that Snelling would charge a service fee of $2,500, and “provided that payment is made upon the start date, we offer a 6-month free replacement guarantee. If termination occurs a suitable replacement must be provided within 30 days or fee is subject to refund.” (Exhibit 1.) Snelling proceeded to identify and offer several candidates to the Deanes for their consideration.
In August of 1994, Snelling offered Alexandra Cromie (“Cromie”) as a nanny/housekeeper candidate to the Deanes. (Exhibit 13.) Since Cromie’s application and resume did not describe any nanny/housekeeping experience, Cabral added the words “housekeeping responsibilities” and “Jun 93" to Cromie’s resume before giving it to the Deanes. After the Deanes interviewed Cromie twice, and after Carol Deane checked two of Cromie’s references, they agreed to hire her. The Deanes assumed that Snelling had also checked Cromie’s references. However, Snelling had only interviewed Cromie by telephone and in person and had reviewed and altered her resume. (Exhibit 13.) Snelling conducted no criminal or background check of Cromie, nor did Snelling check any of her references. (Exhibit 8.)
Deane and Snelling signed a contract dated August 31, 1994, for Alexandra Cromie’s services. (Exhibits 3 and 3A.) In that contract, Snelling agreed that “to Mrs. Deane’s complete discretion, that [Snelling] will find a replacement during a 30-day period after certain notification to [Spelling], which replacement must be completely satisfactory to Mrs. Deane in all aspects of our current understanding.” On September 1, 1994, Deane paid Snelling a fee of $2,500 pursuant to their contract. (Exhibit 4.)
Cromie commenced work with the Deanes on August 22, 1994. She turned out to be an immediate and unmitigated disaster. She had lied on her application, provided Deane and Snelling with several different resumes, was unreliable, had no experience as a housekeeper, would lock herself in a bathroom at the Deanes’ Walnut Street house for extended and unexplained periods of time, was frequently absent, and flirted with several of the men who were making repairs and renovations to the Walnut Street house. Cromie ultimately disappeared one Saturday morning in September 1994, just as the Deanes decided to fire her. The Deanes notified Snelling on or about September 15, 1994 that Cromie was unacceptable, and they demanded that Snelling provide a replacement for her.
In late September or early October, Snelling presented Rita Lally (“Lally”) as a candidate to the Deanes. The Deanes interviewed Lally several times, although they quickly decided that Lally was overqualified and had no childcare or housekeeping experience. Lally also wanted a higher salary than the Deanes were willing to pay, and she was unwilling to work the specific hours that the Deanes required. On October 27, 1994, Deane’s assistant, Francesca Dricot, advised Snelling that Lally was unacceptable and requested a refund of the fee that Deane had paid to Snelling., (Exhibit 5.) Although Snelling had presented or offered to present other candidates to the Deanes prior to October 27, 1994, each wanted a higher salary than the Deanes were willing to pay.
On December 23, 1994, Deane wrote to Snelling and again demanded a refund of his fee. Deane stated that he would “commence legal action, not only for the fee that was advanced to [Spelling], but also for damages, substitute help, investigation fees; etc. that were caused through your recommendation of the first prospect, Alexandra Cromie.” (Exhibit 6.) Cabral responded to Deane by letter dated December 27, 1994, in which he stated that Snelling had complied with its obligations under their contract, and that “we had specifically told you we were not allowed by Massachusetts employment laws to conduct a pre-employment police check on this [Cromie] or any other candidate.”
On January 19, 1995, Ropes & Gray, as counsel for Deane, wrote a G.L.c. 93A demand letter to Snelling. (Exhibit 12.) Snelling did not respond in writing to this demand letter. On April 12, 1995, Ropes & Gray filed a complaint against Snelling with the Massachusetts Department of Labor and Industry pursuant to G.L.c. 140, §46Q. (Exhibit 11.) In the spring of 1995, the Deanes hired another individual as a nanny/housekeeper who had been recommended by their painting contractor.
Deane presented no evidence at trial of any damages that he allegedly incurred as a result of Snefling’s alleged breach of contract and alleged violations of G.L.c. 93A, aside from his payment of a fee of $2,500 to Snelling on September 1, 1994 in connection with the contract dated August 31, 1994.
RULINGS OF LAW
I. Breach of Contract Claim
Snelling and Deane agree that a contract existed between the parties by which Snelling agreed to pro *435 vide Cromie’s services and, if Cromie proved unsatisfactory, a satisfactory replacement. Given that neither Cromie nor Lally proved satisfactory, Deane has made out a prima facie case that the contract was breached.
Snelling’s principal argument in opposition to Deane’s breach of contract claim is that Deane failed to give Snelling an opportunity to fulfill the contract, and thus violated his duty of good faith and fair dealing. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 476 (1991). Additionally, Snelling contends it was in fact informed by Deane that Lally was acceptable.
The court has found, however, that Deane deemed Lally unacceptable and conveyed his dissatisfaction to Snelling. Deane then simply adopted the reasonable stance of demanding a refund after two Snelling placements proved unsatisfactory. Thus, there is no evidence that Deane breached his duty of good faith and fair dealing. Compare Anthony’s Pier Four, Inc., 411 Mass. at 476.
The court rules that a contract was formed between Deane and Snelling, and that the contract required Snelling to find a replacement within 30 days of being notified that Cromie was unsatisfactory. Further, the contract required the replacement to be “completely satisfactory to Mrs. Deane in all aspects of our current understanding.” The “current understanding” between Deane and Snelling, at the time the contract was formed, was that any placement by Snelling would meet certain requirements regarding hours and other matters. Snelling failed to find a candidate which met those requirements. Thus, Snelling breached the contract.
Having found a breach of contract, the court turns to the question of damages. The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in if the contract had been performed. See, e.g., International Totalizing Systems, Inc. v. Pepsi-Co., Inc., 29 Mass.App.Ct. 424, rev. denied, 408 Mass. 1105 (1990).
In the instant case, the only evidence of damages suffered by Deane is the $2,500 fee he paid to Snelling. Since Snelling breached its contract with Deane, it is liable to Deane in this amount. Deane has presented no evidence of damages beyond this sum.
II. Chapter 93A Claim
G.L.c. 93, §2(a) makes unlawful “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” Section 9 of the statute gives this court jurisdiction over actions brought by consumers allegedly injured by deceptive trade practices.
In his demand letter pursuant to G.L.c. 93, §9(3), Deane alleges three deceptive actions by Snelling: (1) the placement of Alexandra Cromie; (2) the replacement of Cromie with Lally, an unsuccessful candidate; and (3) the refusal to provide Deane a refund.
Having identified these three grounds for his Chapter 93A action in his demand letter, Deane is now limited to these claims at trial. See, Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975); see also Bressel v. Jolicoeur, 34 Mass.App.Ct. 205, 211, rev. denied, 415 Mass. 1101 (1993). This rule is appropriate since the purpose of the demand letter is to facilitate the settlement and damage assessment aspects of Chapter 93A. Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704-05 (1975).
Since it is undisputed that Snelling was engaged in “trade or commerce,” the court turns to whether it committed unfair or deceptive acts. Acts which are “immoral, unethical, oppressive, or unscrupulous” violate the statute. Massachusetts Farm Bureau Fed’n., Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722, 729 (1989), quoting Zayre Corp. v. Computer Sys. of Am., Inc., 24 Mass.App.Ct. 559, 570, rev. denied, 400 Mass. 1107 (1987). Failure to disclose any fact, disclosure of which may influence á buyer not to enter into a transaction, also violates the statute. Grossman v. Waltham Chemical Co., 14 Mass.App.Ct. 932 (1982) (seller’s failure to disclose presence of termites on property deceptive). Slaney v. Westwood Auto, Inc., 366 Mass. 688 (1975) (seller’s failure to disclose defect in engine of automobile deceptive).
Deceptive actions which are not willful are still actionable under Chapter 93A. Glickman v. Brown, 21 Mass.App.Ct. 229, 235, rev. denied, 396 Mass. 1106 (1985) (seller of condominium units who failed to make diligent efforts to discover flaws in heating system liable under statute). Liability may accrue from false statements carelessly made where the speaker, having not checked the available facts, remained unaware of any falsity. Acushnet Federal Credit Union v. Roderick, 26 Mass.App.Ct. 604, 607 (1988). That is, a misrepresentation of fact, the truth of which is reasonably capable of ascertainment, is an unfair and deceptive act or practice within the meaning of the statute. Glickman, 21 Mass.App.Ct. at 235.
To establish causation for Chapter 93A purposes, a plaintiff need not prove actual reliance on the deceptive statements. Glickman, 21 Mass.App.Ct. at 236. Rather, causation is established if an act could reasonably be found to have caused a person to act differently from the way he otherwise would have acted. Lowell Gas Co. v. Attorney General, 377 Mass. 37, 51 (1979). See also Grossman, 14 Mass.App.Ct. at 933 (causation established where omitted fact may have caused plaintiff to refrain from purchasing property).
The court now turns to Snelling’s allegedly deceptive acts and practices.
*436 (A)The Placement of Alexandra Cromie
The facts and circumstances of this case demonstrate that Deane was concerned about the qualifications, background and personal stability of any potential housekeeper/nanny placed in his home. He conveyed this concern to Snelling through his meetings with Diamond and Cabral. Snelling thus knew that Deane desired any potential housekeeper/nanny to have been thoroughly investigated by Snelling. Despite this awareness, Snelling failed to explain to Deane that its policy was to make absolutely no inquiry into the background of its candidates.
Snelling, in omitting this information, failed to provide Deane with facts which, if known to him, might well have caused him to act differently toward Snelling. See Grossman, 14 Mass.App.Ct. at 933. Snelling’s actions were thus deceptive within the meaning of G.L.c. 93A, §2.
The court also finds that even absent Deane’s clearly stated requirements regarding a potential housekeeper/nanny’s background, it is reasonable to expect that Snelling, having held itself as a personnel placement service, and in return for the $2,500 it received from Deane, would have conducted some inquiry into Cromie’s past. Instead, Snelling’s policy was to do nothing. The court rules that such a policy, when not clearly explained to the consumer, constitutes an unfair trade practice in the circumstances presented. Just as the seller of condominium units in Glickman was required to make a reasonable inquiry into potential flaws in units prior to sale, so is a provider of in-home help required to make some reasonable inquiry into potential candidates it offers for such a position. Where no such inquiry is made, and a candidate is as deficient as Cromie was, liability is proper under Chapter 93A. See Glickman, 21 Mass.App.Ct. at 235.
Certainly, Snelling was not required to vet Cromie as thoroughly as one would a Cabinet-level nominee. However, a consumer such as Deane had a right to expect more than he received.[2] Snelling, having held itself out to the Deanes as a provider of competent in-home help, ultimately did virtually nothing to vouch for its product. Given her inconsistent resumes and application form, a check with her past employers would have raised serious questions about her candidacy; thus, Snelling failed to learn facts about Cromie that were reasonably capable of ascertainment. See Glickman, 21 Mass.App.Ct. at 235.
Finally, it is apparent that Snelling also committed an affirmatively deceptive act by altering Cromie’s resume to make it appear that she possessed housekeeping experience. The court finds that this act was deceptive in that it was designed to convince Deane that Cromie indeed had the kind of experience that he required. See Slaney, 366 Mass. at 703.
A moment must be spent on the issue of causation, since Carol Deane herself checked two of Cromie’s references, potentially minimizing the effect of Snelling’s failure, to do so.[3] The court concludes that while the Deanes’ actions do somewhat attenuate the effect of Snelling’s omissions, Deane has demonstrated that Snelling’s general policy of non-inquiry into its candidates’ past, if known by the Deanes, may well have prompted the Deanes to act differently. See Grossman, 14 Mass.App.Ct. at 933. No stronger causal nexus than this is required for liability under Chapter 93A. Id.
In sum, the following aspects of Snelling’s placement of Cromie were deceptive: (1) Snelling’s failure to disclose its no-inquiry policy to Deane, despite Deane’s stated concerns; (2) Snelling’s failure to make any reasonable inquiry into Cromie’s background, despite having held itself out as a provider of competent in-home help; and (3) Snelling’s alteration of Cromie’s resume to make her more acceptable to tyre Deanes. Each of these provides an independent, alternative basis for finding liability under Chapter 93A, as each establishes that the placement of Cromie in the Deane’s home was a deceptive act.
(B) The Replacement of Cromie with Lally
Lally was viewed by the Deanes as an unacceptable replacement for Cromie because she sought excessive compensation and would not work the specific hours required. There is, however, no evidence that Snelling affirmatively misled the Deanes about Lally or in any way sought to foist her on the unsuspecting Deanes. Nor do the perceived deficiencies in Lally’s candidacy rise to the level of those associated with Cromie. With regard to Lally, Snelling did not fail to ascertain any reasonably discoverable facts that might have caused Deane to act differently. There is no evidence that Snelling’s effort to place Lally was anything other than an attempt, albeit an unsuccessful one, to remedy a deteriorating situation. Thus, Deane has failed to show that Snelling acted in an unfair or deceptive manner in its placement of Lally.
(C) The Refusal to Provide Deane a Refund
The failure of a seller to grant a refund, when promised as part of an inducement to buy, may, in some circumstances, constitute an unfair or deceptive practice. Bell v. Surveillance Unlimited, Inc., 9 Mass.App.Ct. 835 (1980). However, there is no evidence that Snelling’s failure to give Deane a refund was deceptive. See Id. at 836. Snelling’s response to Deane’s Chapter 93A demand letter indicates that Snelling believed it had fulfilled its contract with Deane, and that no refund was thus due. There is no evidence that the position taken by Snelling in its letter was disingenuous or in bad faith. Further, Snelling was not required by the terms of the contract to reimburse Deane, since Deane failed to pay in full by Cromie’s starting date.
Having determined that Snelling engaged in a violation of Chapter 93A solely through its placement of Cromie, the court turns to the issue of damages.
*437 (D) Actual Damages
If a violation G.L.c. 93A, §9 is found, recovery will be in the amount of actual damages or $25, whichever is greater. G.L.c. 93A, §9(3). Although “actual damages” are defined broadly for 93A purposes, see Brown v. LeClaire, 20 Mass.App.Ct. 976 (1985), in the present case Deane has presented absolutely no evidence that shows how Snelling’s deceptive actions damaged him. Thus, the court finds Deane is entitled solely to statutory damages in the amount of $25.
Willful engagement in deceptive practices may give rise to multiple damages under the statute. G.L.c. 93A, §9(3). Anthony's Pier Four, 411 Mass. at 475. The court finds that Snelling engaged in a willfully deceptive act by altering Cromie’s resume to make it appear she had housekeeping experience. Thus, Deane would be entitled to multiple damages. However, where a plaintiff is entitled to multiple damages, but where the only damages awarded are statutory rather than actual, plaintiff is entitled to only those statutory damages. Leardi v. Brown, 394 Mass. 151, 163 (1985).
(E) Attorneys Fees
Chapter 93A also provides that a prevailing plaintiff shall, in addition to other relief and irrespective of the amount in controversy, be awarded reasonable attorneys fees. G.L.c. 93A, §9(4). Even a plaintiff who recovers only statutory damages is entitled to attorneys fees. Leardi, 394 Mass. 151. Further, in cases where a substantive violation of Chapter 93A is established, attorneys fees are proper even where the plaintiff fails to provide any evidence to establish the reasonable value of those fees. Blanchette v. Cataldo, 734 F.2d 869, 878 (1st Cir. 1984). The responsibilily for establishing the amount of reasonable attorneys fees lies primarily with the judge, not the party seeking the fees. Id.
An evidentiary hearing is not required to determine the amount of the fees. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 630-31 (1978). Rather, the judge “is to rely on his firsthand knowledge of the services performed before him.” Id. at 631. The determination depends on not what the attorney usually charges but, rather, on what his services are objectively worth. Id. at 629. ‘The crucial factors in making such a determination are (1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney.” Id.
To aid its determination of the proper award of attorneys fees in this case, the court will direct Deane’s counsel to submit an affidavit itemizing the fees and costs incurred in this case, and allow Snelling an opportunity to comment upon or challenge those fees and costs.
ORDER
For the foregoing reasons, Count I of the complaint shall be dismissed. Judgment shall enter for Disque D. Dean on Count II of the complaint in the amount of $2,500.00. Judgment shall also enter for Disque D. Dean on Count III of the complaint in the amount of $25.00.
Reasonable attorneys fees shall also be paid to Disque D. Dean in an amount to be determined by the court. Counsel for Disque D. Dean shall serve upon Snelling within 15 days of this order, under Superior Court Rule 9A, an affidavit itemizing the attorneys fees and expenses he has incurred in this case. Upon review of this affidavit, and any opposition thereto, the court will determine the amount of attorneys fees to be awarded, together with interest and the cost is action.

 Deane has now conceded that since his damages are purely economic, his negligence claim (Count I) must be dismissed. Plaintiffs Post-Trial Memorandum of Law, Page 1.

 The court does not hold, as matter of law, that all agencies such as Snelling must make a certain level of inquiry into the background of its candidates. It simply finds that in the circumstances presented here (which included a $2,500 payment from Deane to Snelling), it was reasonable to expect that Snelling would have investigated Cromie more thoroughly than it did.

 The Deanes also interviewed Cromie twice.