van Gestel, J.
This matter came before the Court on an application by the defendants for fees and costs of counsel, and fees for a court-appointed expert. On October 9, 2001, this Court ordered the plaintiff “to reimburse the defendants for their contribution to Mr. Shear and his company of the costs and fees of the Court’s expert, and for the fees and expenses reasonably charged by counsel for the defendants to their own clients in all matters relating to the discovery of Munshani’s fraud, such that the entire cost thereof shall be borne by the perpetrator.” 13 Mass. L. Rptr. 732.

Fees and Costs Regarding the Court’s Expert

There is no dispute as to the amounts owed for the expert; it just has not been paid by the plaintiff, Suni Munshani (“Munshani”), as ordered by the Court. New counsel for Munshani suggests that he is attempting to work out a payment schedule with Mr. Shear and his firm, Electronic Evidence Discovery, Inc. This is not acceptable to the Court. Mr. Shear was not engaged at the urging of all parties, including particularly Munshani, to then have his fair and reasonable compensation delayed. The entire amount due to Mr. Shear and his firm is ORDERED to be paid by Munshani within ten days from the date hereof. The Court understands that amount to be $62,035.52.
Further, an additional $16,809.45, heretofore paid to Mr. Shear and his firm by the defendants, also remains unreimbursed. That sum is also ORDERED to be paid by Munshani to the defendants or their counsel within ten days from the date hereof.

Fees and Costs of Defendants’ Counsel

Counsel for the defendants have applied for $335,713.55 in fees and expenses pursuant to the Court’s Order quoted above — an astonishingly large amount. What the Court ordered paid by Munshani on this aspect was “the fees and expenses reasonably charged by counsel for the defendants to their own clients in all matters relating to the discovery of Munshani’s fraud.” (Emphasis supplied.)
The law regarding the assessment of attorneys fees and costs as part of a sanction for misbehavior has been thoroughly rehearsed. See, e.g., Berman v. Linnane, 434 Mass. 301, 302-03 (2001); Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979); Heller v. Silverbranch Const. Corp., 376 Mass. 621, 628-29 (1978); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974); Ricci v. Key Bancshares of Maine, Inc., 111 F.R.D. 369, 378-81 (D. Maine 1986). “What constitutes a reasonable fee is a question that is committed to the sound discretion of the judge.” Berman, supra, 434 Mass. at 302-03.
In Heller, the Supreme Judicial Court stated that “the standard of reasonableness depends not on what the attorney usually charges but, rather, on what his services were objectively worth.” Heller, supra, 376 Mass. at 629. “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.” Berman, supra, 434 Mass. at 303. Further, the SJC noted that a “judge presiding over the action . . . can discern from his own experience as a judge and expertise as a lawyer, the amount the attorney should be paid.” Heller, supra, 376 Mass. at 629. This Court feels quite comfortable doing so in the present instance.
In this matter, the defendants’ attorneys consisted of a team involving: a partner with 17 years of litigating experience, charging $510 per hour; another partner with 20 years of litigating experience, charging $465 per hour; a senior associate, charging $360 per hour; a junior associate, charging $235 per hour; a research librarian, not said to be a lawyer, charging $170 per hour; and a “summer associate,” admitted not to be a lawyer, charging $160 per hour. The $510-per-hour partner spent 292.75 hours; the $465-per-hour partner spent 73.25 hours; the $360-per-hour senior associate spent 296.75 hours; the $235-per-hour junior associate spent 139 hours; the $170-per-hour research librarian spent .75 hours; and the $160-per-hour summer associate spent 21 hours. This collective effort aggregates 823.5 hours, which for a single person equates to 20.59 full forty-hour weeks, or more than five, four-week months.
The court docket reflects that during the time from the initial discovery of possible fraud by Munshani in February 2001 through the time that the Court issued its Order for sanctions on October 9, 2001, the following pleadings and orders relating to the alleged fraud were docketed, many of which had supporting memoranda that do not necessarily appear on the docket: ex parte motion of defendants for preservation of evidence (#27);[1] plaintiffs opposition to ex parte emergency motion (#30); order on defendants’ motion (#31); emergency motion of Hemant Trivedi for modification (#32); modified order (#33); defendants’ submission regarding expert (#34); plaintiffs submission regard- *188 mg expert (#35); plaintiffs motion to stay discovery (#39); motion of Trivedi for further modification (#41); order staying discovery (#42); inquiry of the Court to expert (#44); motion of plaintiff regarding communications with expert (#45); defendants’ response to motion regarding communications (#46); affidavit of Mr. Walsh (#47); stipulated order regarding preservation of evidence (#48); defendants’ motion to lift stay of discovery (#49); inquiry of expert by the Court (#50); response to inquiry (#51); emergency motion of plaintiff to prohibit parties from reviewing expert report (#52); memorandum of Court regarding stay of discovery (#53); response of Trivedi to expert report (#54); response of defendants to expert report (#55); expert's report (#56); plaintiffs response to expert report (#60); and, memorandum and order of the Court following expert’s report (#61). Of the foregoing 25 docket items, only six were filed by the defendants.[2]
During that same period,[3] there were approximately ten appearances before the Court, no one of which lasted more than an hour, with most consuming fewer than 30 minutes.
Does any one of the very talented attorneys representing the defendants not consider their application for $326,346.25 for this work — to use Judge Aldrich’s words in Ricci, supra, 111 F.R.D. at 378—"grossly excessive?" Much like Judge Aldrich, this Court finds it “difficult not to be offended that [it] is being asked to approve charges” such as this. Id. at 379.
Rather than prolonging this process any further, or calling for more costly filings and hearings, this Court will apply its own expertise gleaned from 35 years as a trial lawyer in a large office in Boston, and its more recent experience for five years thereafter on the Superior Court, to assay what objectively is a “reasonable” charge for “all” matters “relating to the discovery of Munshani’s fraud.”
The Court can only paint with a broad brush. In doing so, however, it believes its sense of what is reasonable, for what is related to all matters involving the discovery of Munshani’s fraud on the Court, is not so wide of the mark as to be an abuse of its discretion. There are three parts to the Court’s determination: (1) court appearances, for which Ms. McPhee was essentially the sole participant for the defendants; (2) research, preparation and filing or serving of pleadings and related papers; and (3) out-of-pocket costs.
For court appearances, the Court will accept a maximum of three hours for preparation and appearance time for each event and will apply fully Ms. McPhee’s rather handsome $510 per hour rate. For the 10 appearances here, this produces charges of $15,300.
For research, preparation and filing or serving of pleadings and related matters, the Court will accept 10 hours for each matter as a reasonable amount of time for the relatively uncomplicated papers in use here and will apply a blended hourly rate made up of that of Ms. McPhee, her partner and her two associates of $392 per hour for each of the 25 matters docketed and noted above. This produces charges of $98,000.
Lastly, the Court accepts the application’s report of $9,367.30, as out of pocket costs.

ORDER

All of the foregoing aggregates $122,667.30. Consequently, the Court ORDERS Munshani to pay to the defendants, or to the defendants’ counsel for the benefit of the defendants, the sum of $122,667.30. This payment must be made in three equal amounts as follows: on or before December 31, 2001, $40,899.10; on or before January 31, 2002, $40,899.10; and on or before February 28, 2002, $40,899.10.

 The number “(#00)” referred to following these documents are the Paper numbers on the docket itself.

 The Court recognizes, of course, that pleadings filed by the plaintiff or by Mr. Trivedi, and orders by the Court, often required responses or other action on behalf of the defendants.

 From February 26, 2001, to October 9, 2001.