Silva, J.
This is an action arising out of the sale of a 1981 Lincoln Mark IV sedan. The complaint sets forth four (4) separate causes of action. Count I seeks money damages for an alleged breach of the implied warranty of merchantability, G.L.c. 106, §2-314. Count II seeks a revocation of acceptance of the contract pursuant to G.L.c. § 2-608 and a return of the purchase price of Eighteen Thousand Three Hundred and Seventy-Five Dollars ($18,375.00). Counts III and IV both allege violations of G.L.c. 93A, §§9 and 11.
A finding was entered for the plaintiff in the sum of Four Thousand Five Hundred Dollars ($4,500.00) oncounts I and II, and triple damages of Thirteen Thousand Five Hundred Dollars ($13,500.00) plus attorney’s fees of Five Thousand Seven Hundred and Fifty Dollars ($5,750 00, on count III, for a total of $19,250.00.
Since all of the counts arose from the same transaction, recovery was restricted to count III. Subsequently, the defendant filed motions for a new trial or in the alternative to amend judgment and to dismiss, all of which were denied. The award of attorney’s fees was made after a separate hearing.
*146 The trial judge made the following findings of fact and conclusions of law.
1. On or about August 9,1980, the Ford Motor Company caused to be shipped to the defendant, Blue Hill Lincoln Mercury, Inc., a new 1981 Lincoln Mark IV series, Sedan, Serial Number 1MRBP96F-3BY602347.
2. The defendant corporation is engaged in the business of selling new and used motor vehicles with principal offices located in Canton, Massachusetts.
3. During the first week of September 1980, said motor vehicle arrived at the defendant’s place of business in an undamaged condition.
4. Thereafter, the Lincoln was placed by the defendant in its outside lot adjacent to its showroom.
5. Shortly thereafter, while said vehicle was so situated, it was vandalized along with several other similarly situated new vehicles.
6. The damage consisted of severe gouging and scratching of certain painted surfaces of the vehicle, namely, the rear deck (trunk) lid, the right rear quarter panel, the right front fender, the left rear quarter panel and the left door.
7. The defendant after discovery, promptly, notified the Canton Police and its insurance carrier.
8. On or about October 29, 1980, the defendant delivered said vehicle to Automotive-Specialties Auto Body of Hyde Park, Massachusetts, for repair of the gouged and scratched surfaces.
9. Thereafter, the vehicle was returned to the defendant’s lot and placed in the new car showroom for October 31,1980.
10. On November 10, 1980, the plaintiff, in the person of its president, went to the defendant’s showroom to purchase a new luxury vehicle. Upon inspection of the vehicle, the plaintiffs officer lifted the hood and noticed (a) fresh tear of paint. Upon inquiring, he was told that the paint was factory fresh and would never need repainting.
11. On November 10, 1980, the plaintiff purchased said vehicle paying after discount by the defendant of $2,286.00, $17,500.00 for same, plus a sales tax of $875.00. Before leaving with the new purchase, the salesman was informed of paint peeling around the edges of the lettering on the trunk and more peeling at joints and chrome trim areas. The salesman informed the plaintiff, ‘Don’t take the vehicle to the car wash, wash by hand.’
12. Between November 12, 1980 and March 10,1981, the plaintiff returned the vehicle to the defendant for new car warranty work on approximately five occasions. That among the complaints were various chrome trim and lettering falling from the vehicle and peeling paint.
13. That on each occasion when the plaintiff complained of peeling paint, the plaintiff was informed that the paint was, factory fresh, clear finish paint,’ was highly scratch resistant, and would never need waxing. The defendant, through its agents, added, ‘nothing done to the paint job since it left the factory.’ The only action taken by the defendant with respect to the peeling paint was to use “touch-up’ paint in February of 1981 on the affected areas.
14. On or about the first of March 1981, the plaintiff consulted with *147 one, Robert Crosby, owner of Body Craft, Inc. with twelve years of experience in the field of automotive repair and restoration and was informed by Mr. Crosby upon inspection that, ‘the car had been repainted, that the entire car, save for the roof, had been repaired’ and that “whoever repainted, did not sand close to the molding and around the script lettering, the repaint is dead dried and has resulted in a dull finish.’
15. That as a result of Mr. Crosby’s findings, the plaintiff arranged a meeting at the offices of the defendant on March 10,1981. It was at this meeting that the plaintiff was informed of the events surrounding the damage to the vehicle and its subsequent repainting in October of
1980. The defendant after first representing that only two or three panels had been repainted, later admitted that five panels had been repainted, but at all times denied “the entire vehicle’ save for the roof had been repainted. The defendant offered to repaint the vehicle to the plaintiff’s satisfaction together with a car to use during repair, at the close of the meeting.
16. That within twenty-four hours after the meeting of March 10, 1981, the plaintiff consulted with his counsel and caused to be sent to the defendant a letter of revocation dated April 23,1981, .. . which alleged non-conformity based upon, ‘body’ damage resulting in paint-peeling and substantial impairment of value.
17. That on April 30, 1981, the defendant responded in writing, (defendant’s exhibit #3) herein incorporated by reference, by its attorney, denying that the vehicle sustained ‘body’ damage prior to the sale and denying non-conformity substantially impairing value and rejecting the revocation of acceptance. However, the defendant did offer, “to remedy any painting problem to your client’s (plaintiffs) satisfaction and to supply another vehicle while any necessary work was being performed,’ ‘a reiteration of the offer made at the conclusion of the March 10,1981 meeting.’
18. Subsequently, on May 5,1981, the plaintiff caused to be sent to the defendant a written demand for relief under Chapter 93A, setting forth substantially the same complaints as set forth in its letter of revocation of April 23,1981.
19. On May 12, 1981, the defendant responded,... in writing, making the following tender of settlement, ‘to remedy any painting defect found to exist upon inspection ... without cost to your client’s (plaintiff’s) satisfaction, and to supply a substitute vehicle to your client (plaintiff) while all necessary work is being performed.’
20. That on August 6,1981, the plaintiff caused to be filed at the Quincy Division of the District Court Department a complaint filed in the instant action.
21. On August 12,1981, the defendant was duly served a summons and a .copy of the complaint.
22. On or about August 19, 1981, the issues of this action were joined by replication of the defendant filed in the Quincy Division.
23. That said answer of the defendant contained a filing of tender of settlement and affidavit as required by paragraph (3) as amended by Section 9, Chapter 93A for the preservation of evidence.
24. On October 18, 1981, at the request of the parties during a Pre-Trial Conference, the Court undertook to examine the vehicle *148 concerned in the parking lot adjacent to the Quincy Court, and it was agreed that the View’ was to be considered as evidence at the subsequent trial to be held on November 18,1982.
25. On November 18, 1982, prior to trial in a lobby conference, it was further stipulated that a second view was unnecessary, inasmuch as there had been no substantial change in the condition of the vehicle and the trial justice may rely on whatever findings the view mandated.
26. The court finds that all paintable areas of the vehicle save for the roof posts and roof had been repainted, further finding extensive peeling of paint where the finish abutted chrome trim and script lettering in repainted portions of vehicle.
27. The court further finds that the defendant, its agents and servants were at all times aware of the damage to the vehicle and its subsequent repainting in the fall of 1980 prior to the purchase by the plaintiff.
28. That despite numerous inquiries by the plaintiff, the defendant, its agents and servants, during the time period, November 10,1980 to March 10,1981, wilfully and knowingly failed to disclose said damage and repainting of the vehicle. In making this finding, the court relies on the testimony of Robert Mosher, President of the defendant’s corporation, ‘I do not think it was necessary to inform the customer that the car was repainted;’ and Sales Manager, Francis Bonanini, ‘It is normal procedure to recondition vehicles (fifty per year) without informing buyers.’
CONCLUSIONS OF LAW AND JUDGMENT
COUNT I — Breach of Warranty of Merchantability.
“Massachusetts Law historically has provided for an implied warranty of merchantability in a sale of consumer goods by a merchant regularly selling such goods. Massachusetts General Laws, Annotated, Chapter 106, Section 2-314(11) provides in part:
Unless excluded or modified by Section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ...
“A dealer who sells automobiles, therefore, impliedly warrants its merchantability. In the instant case, the defendant placed the subject’s vehicle in its new car showroom representing same to be new in all respects. The Court finds that said vehicle did not conform to that representation (later confirmed by the salesman) of fact. The Court finds for the Plaintiff in Count I.”
COUNT II — Revocation.
“Massachuseets General Laws, Chapter 106, Section 2-608 provides as follows:
The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it... (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the sellers assurances. (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It (Revocation of Acceptance) is not effective until the buyer notifies the seller of it. (3) A buyer who so *149 revokes has the same rights and duties with regard to the goods involved as if he had rejected them..
“The Court finds that the non-conformity, i.e. the repainting of a substantial portion of a new vehicle, substantially impaired the resale value of said vehicle; that the plaintiff was reasonably induced to accept said vehicle by the assurances that the vehicle was, factory fresh’ and had not been repainted; that notice of the revocation occured within a reasonable time after discovery of non-conformity; and that in view of the defendant’s denials and rejection of revocation of acceptance, the plaintiff was relieved of any duty to return the vehicle. The Court finds for the plaintiff in Count II.”
COUNT III — Chapter 93A.
“Chapter 93A designated as ‘Regulation of Business Practice and Consumer Protection Act,’ St. 1967, Chapter 813, Section 2, is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights, making conduct unlawful which was not lawful under common law or any prior statute. Section 2(a) of Chapter 93A declares in part: That. . . unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.’ Section 2(c) of Chapter 93A provides in part:
That the Attorney General may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter.’
“The Office of the Attorney General — Consumer Protection Division Reuglation 940 CMR 3.00: General Regulation’s, Section 3.16(1) provides:
... It is further an unfair and deceptive trade practice for a seller to offer for sale or sell any product which is ..., reconditioned,.. . unless prior clear and conspicuous disclosure that such a product has been . . . reconditioned ... is made to the buyer or prospective buyer.
“Further, Section 3.16 of the same General Regulation of the Consumer Protection Division of the Attorney General set forth in the preceding paragraph provides:
Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of Chapter 93A Section 2 If:... (2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter the transaction . ..
“Chapter 93A Section 9, as amended, provides in part:
Any person . .. who has been injured by another person’s use or employment of any method, act or practice declared to be unlawful by Section 2 or any rule or regulation issued thereunder ... may bring an action ... for damages ...
(3) At least thirty days prior to filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon, and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief, who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning the rejection and thereby limit any recovery to the relief tendered if the court finds the relief tendered was reasonable in *150 relation to the injury actually suffered by the petitioner. . . . (3A). A person may assert any claim under this section in a district court, whether by way of original complaint, counterclaim, cross-claim or third party action, for money damages only. Said damages may include double or treble damages, attorney’s fees and costs, as herein provided. The demand requirements and provisions for tender of offer of settlement provided in paragraph (3), shall also be applicable under this paragraph . . . ’
‘The Court finds that the defendant engaged in an unfair and deceptive trade practice as set forth in Section 2 of Chapter 93A and the Attorney General’s regulations. The Court finds that the offer of settlement made by the defendant in response to the plaintiffs letter of Revocation and Chapter 93A claim, although attractive, was not, under these circumstances, reasonable as required by Chapter 93A, Section 3.
“The only reasonable offer of settlement in this set of facts, would have been an offer to exchange either the purchase price or a new comparable vehicle for the subject Lincoln.
‘The actions of the defendant, as found by the Court, constitutes conduct which the Legislature has declared unlawful and the violations herein, the Court finds to be wilful and knowing. The Court finds for the plaintiff.”
DAMAGES
‘The Court finds that, upon the evidence, plaintiff is entitled to damages as follows: the difference between the expected value of the vehicle on purchase, namely, $17,500.00 and the actual value of the repainted vehicle as received on November 10,1981, namely, $13,000.00.
‘The Court finds for the Plaintiff for $4,500.00 in Counts I and II. The Court finds for the Plaintiff in Count III for $13,500.00 plus attorney’s fees in the amount of $5,750.00 for a total of $19,250.00. All counts arising from the same transaction, satisfaction is limtied to recovery under Count III only.”
At the close of trial and before final arguments, the defendant made the following requests for rulings, and the Court took the action indicated thereon:
3. The Plaintiff cannot recover for any alleged deceptive act or practice not specifically mentioned in his demand letter dated May 5, 1981.
RULING: Allowed.
5. Attorney’s fees incurred by a buyer prior to the date on which a reasonable settlement offer is rejected cannot be considered in determining the reasonableness of a settlement offer and should not be treated as part of the “injury actually suffered by the Plaintiff.
RULING: Allowed.
6. If the Court finds the Defendant’s tender of settlement dated May 12, 1981, was reasonable in relationship to the injury actually suffered by the Plaintiff, the Plaintiff’s recovery cannot exceed the relief tendered and cannot include attorney’s fees incurred after the rejection of the offer settlement.
RULING: Allowed. See Findings.
7. The evidence warrants a finding that the Defendant’s offer of settlement (to remedy any painting defect to the Plaintiffs satisfaction without cost to the Plaintiff and to supply a substitute vehicle while the work was being performed) was reasonable in relationship to the injury actually suffered by the Plaintiff.
RULING: Allowed. See Findings.
11. The evidence warrants a finding that the damages alleged by the Plaintiff were of a minimal sum with respect to the value of the vehicle.
*151 RULING: Allowed. See Findings.
' 13. The evidence does not warrant a finding that the Defendant refused to honor any warranties to the Plaintiff.
RULING: Allowed. See Findings.
8. As a matter of law, the Defendant’s offer of settlement (to remedy any painting defect to the Plaintiff’s satisfaction without costs to the Plaintiff and to supply a substitute vehicle while the work was being performed) was reasonable in relationship to the injury actually suffered by the Plaintiff.
RULING: Denied.
10. The evidence does not warrant a finding that the damages alleged by the Plaintiff amount to a substantial impairment of the value of the vehicle.
RULING: Denied.
12. The evidence does not warrant a finding for the Plaintiff in Count III of the complaint beyond the relief tendered by the Defendant in its offer of settlement dated May 12,1981.
RULING: Denied.
15. Under the provisions of Massachusetts General Laws, Ch. 106 § 608(a), the Plaintiff could not validly revoke his acceptance of the vehicle unless the Defendant neglected or refused to seasonably cure any non-conformity.
RULING: Denied.
16. The evidence does not warrant a finding that the Defendant neglected or refused to cure any alleged non-conformity in the vehicle.
RULING: Denied.
17. The evidence does not warrant a finding for the Plaintiff on Count II of the complaint.
RULING: Denied.
In two lengthy lobby conferences, settlement attempts were negotiated and entered into by representatives of the plaintiff and defendant, and amounts of monies were discussed and recommended. Monetary settlement offers were made by the plaintiff. Subsequently, defendant’s motion requesting disqualification of the judge, because of the protracted lobby conferences, was heard in open court, and was denied.
The Defendant claims to be aggrieved by the following:
A. The judge’s failing to disqualify himself;
B. The ruling of triple damages under Count III of the Amended Complaint;
C. The finding for the Plaintiff on Count III for THIRTEEN THOUSAND, FIVE HUNDRED AND no/100 $13,500.00) DOLLARS as being excessive and against the weight of the evidence;
D. The awarding of attorney’s fees in the sum of FIVE THOUSAND, SEVEN HUNDRED FIFTY and no/100 ($5,750.00) DOLLARS on Count III of the Amended Complaint and the failure of the Court to conduct a separate hearing on the issue of said attorney’s fees as was stated by the Court and the parties during the Trial. However, such a hearing was held on June 2, 1983, and the initial attorney’s fee as found by the court was allowed; ■ >
E. The failure of the Plaintiff’s counsel to file an affidavit relating to said attorney’s fees. An affidavit was filed on June 2, 1983, at the hearing.
F. And on the rulings of the Court to the Defendant’s Request for Rulings numbered 3, 5, 7,11,13, 8,10,12,15,16, and 17:
*152 Subsequent to the rendering of its finding of fact, conclusions of law, and judgments by the court, the Defendant seasonably filed a Motion for New Trial, or in the alternative, Motion to Amend Judgment, pursuant to M.R.C.P. 59(a) on the following grounds:
A. To prevent a failure of justice;
B. The damages are excessive;
C. The damages are against the weight of the evidence;
D. Plaintiff’s amended complaint fails to contain a prayer seeking damages under Count III, and the assessment of damages under Count III is in error;
E. Plaintiffs amended complaint seeks damages under Count I, and a recision and revocation of the purchase contract under Count II;
F. The awarding of triple damages was excessive and unreasonable in view of the tender, evidence, and the Court’s rulings to Defendant’s Request for Rulings #3, #6, #7, #11, #13.
G. At the conclusion of the trial, the court and the parties concurred that a separate hearing would be held regarding the question of attorney’s fees.
The above motion was denied by the court.
The Defendant also seasonably filed a Motion to Dismiss the claim by the Plaintiffs attorney for legal fees on the basis of Supreme Judicial Court Disciplinary Rule 2-106(b), which prohibits an attorney from undertaking a contingent fee arrangement unless permitted by S.J.C. Rule 3.05, D.R. 2-106(c), which requires that a contingent fee agreement be in writing, signed by both the attorney and the client, and contain several items of specific information. The court took the position that it was not in its province to rule on the Supreme Judicial Court Rules relating to this issue.
The Defendant claims to be further aggrieved by the denial of its post-trial motions.
The tenor or the defendant’s argument is one of disappointment with the court’s findings of fact, and specifically that the defendant knowingly and wilfully violated Chapter 93 A, thereby triggering the treble damage award and attorney’s fees.
General and special findings of the trial justice are to stand if warranted in law upon any possible view of the evidence. Moss v. Old Colony Trust Co., 246 Mass. 139, 143 (1923). Such findings of fact made by the trial judge will not be disturbed if they can be sustained on any reasonable view of the evidence or unless they are wrong as a matter of law. Barttro v. Watertown Square Theatre, 309 Mass. 223, 224 (1941).
The defendant argues that it is not incumbent upon him to inform the buyer of a paint defect or that the car had been repainted, as it is normal procedure to recondition about fifty (50) vehicles per year without informing buyers. The defendant contends further that this conduct does not constitute an unfair or deceptive practice, and that the damages should have been limited to actual damage of $4500.00 on counts I and II for breach of implied warranty of merchantability, G.L.c. 106, §2-314, and nonconformity G.L.C. 106, §2-608. The judge’s finding that there was a material and substantial breach of warranty under Counts I and II provides the plaintiff with ample basis for recovery under G.L.c. 93A. Attorney General’s Rules and Regulations, 940 CMR 3.15(1), *153 d. 16(2)[1], Slaney v. Westwood Auto, Inc., 366 Mass. 688, 702 (1975).
In general, whether a given practice is unfair or deceptive must be determined from the circumstances of each case. Noyes v. Quincy Mutual Fire Insurance Co., 7 Mass. App. Ct. 723, 726, (1979). The broad scope of G.L.c. 93A and its general purpose is to providé “disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities”. Purity Supreme Inc. v. Attorney General, 380 Mass. 762, 776, (1980).
It is obvious from the court’s findings that the defendant failed to disclose, upon inquiry, a material fact; namely, that the new automobile which cost $17,500.00 had been repainted. Had the plaintiff been aware of the fact that this motor vehicle had been repainted he would not have purchased the same. Failure to disclose any fact, the disclosure of which may have influenced persons not to enter into the transaction, is a violation of Chapter 93A. Grossman v Waltham Chemical Co., 14 Mass. App. Ct. 932, 933 (1982).
The plaintiff questioned the paint tear and repeatedly complained about the peeling. It was only when the plaintiff had the vehicle inspected by an expert that the defendant, through its agents and servants, made the plaintiff aware of the damage caused by vandalism and the repainting prior to the plaintiffs purchase of the vehicle. Two of the defendant’s officers, the president and the sales manager, testified that it was their belief that it was not necessary to inform a prospective buyer. In the view of the trial justice, this equals a knowing and wilful violation of Chapter 93A thereby entitling the plaintiff to treble damages and attorney’s fees. Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 583 (1983).
The second argument raised by the defendant attacks the court’s finding that the defendant breached the implied warranty of merchantability. The court found that the defendant represented that the car was new in all respects and therefore violated G.L.c. 106, § 2-314 by failing to disclose the fact that the car had been vandalized and repainted. The Attorney General, pursuant to the authority granted by G.L.c. 93A, §2(c), has promulgated a regulation declaring that the failure to perform or fulfill any promises or obligation arising under a warranty shall be deemed an unfair or deceptive act or practice. Breach of an implied warranty of merchantability constitutes an unfair and deceptive act or practice under G.L.c. 93A, § 2. Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 821 (1982); Burnham v. Mark IV Homes Inc., supra, at page 581.
The defendant also raises the issue of whether the court erred in finding a *154 substantial impairment of the vehicle’s value. G.L.c. 106, § 2-608, provides that the buyer can revoke acceptance of goods which do not conform, as a result of which the value of the goods, to him, has been substantially impaired. If acceptance was induced either by a difficulty or discovery of the seller’s assurances that the goods were as represented, the acceptance can be revoked if made within a reasonable time.
We find that there was ample evidence to sustain the court’s findings.
The defendant also complains that the trial justice should have disqualified himself from hearing the case because of his involvement in pre-trial settlement negotiations. The matter of disqualification is largely within the discretion of the judge. Spence v. Reeder, 1981 Mass. Adv. Sh. 229, 251.
For reversal of the trial justice’s action in denying any motion which is addressed, inter alia, to the sound discretion of the court, there must be an abuse of that discretion. “Abuse of discretion” has been defined as a view or action that no conscientious judge acting intelligently could honestly make. Gurney v. McIntires Dairy, Inc., 50 Mass. App. Dec. 46, 49 (1972). The burden of showing abuse of discretion must be met by the party claiming such abuse. Hagenguth v. Old Storrotown Tavern, Inc., 350 Mass. 866 (1971). We discern no abuse.
The defendant makes a novel argument that there was a contingent fee agreement between the plaintiff and his attorney; that said arrangement was not in writing in violation of the Rules of the Supreme Judicial Court and therefore the attorney’s fee claimed is illegal and improper and should be dismissed. The basis for the defendant’s allegation is that the plaintiff testified that he did not have a written fee agreement with his attorney and if the case were lost he would pay a minimal fee.
Supreme Judicial Court Rule 3:05(1) defines the term “contingent fee agreement ” as
an agreement, express or implied, for legal services of an attorney or attorneys (including any associated counsel), under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which is either fixed or is to be determined under a formula. The term, ‘contingent fee agreement’ shall not include an arrangement with a client, express or implied, that the client in any event is to pay the attorney the reasonable value of his services and his reasonable expenses and disbursement.
The simple answer to the defendant’s argument is that compliance or noncompliance with SJC Rule 3:05 should only be determined upon complaint of a client and the defendant lacks standing to raise this issue. In any event, we find that the fees were assessed by the court in accordance with G.L.c. 93A, §9(4) which provides that,
if the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount of controversy, be awarded reasonable attorney’s fees and costs incurred in connection with said action; provided, however, the court shall deny recovery of attorney’s fees and costs which are incurred after rejection of a reasonable written offer of settlement made within 30 days of the mailing or delivery of the written demand for relief required by.this section.
The trial judge after very extensive findings of fact concluded that the *155 defendant had wilfully and knowingly violated G.L.c. 93A, §2 by deliberately concealing from the plaintiff the fact that the vehicle had been repainted. He also determined that the defendant’s refusal to refund the purchase price or exchange the painted Lincoln for a comparable new vehicle constituted conduct which the Legislature has declared unlawful and which the court found to be wilful and knowing. In any case brought under G.L.c. 93A, where the court makes a finding that acts complained of constituted an unfair act or practice in violation of §2, the plaintiff shall be entitled to reasonable attorney’s fees and costs. Raymer v. Baystate National Bank, 384 Mass. 310 (1981); 515; Patry v. Liberty Mobilehome Sales, Inc., 15 Mass. App Ct. 701, 706 (1983).
The defendant also challenges the reasonableness of the fees. Notwithstanding the fact that G.L.c. 93A, §9 does not mandate an evidentiary hearing on the question of fees, the trial justice conducted a post-trial hearing. Where the award is provided for by statute and is assessed against the party having no contractual relationship with the attorney involved, the standard of reasonableness depends not on what the attorney usually charges but, rather, on what his services were objectively worth. Absent specific direction from the Legislature, the crucial factors in making such a determination are (1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved, and (3) the degree of competence demonstrated by the attorney. A judge presiding over the action for which the plaintiff seeks reasonable attorneys fees has ample opportunity to acquire first hand knowledge of all these factors. He thus can discern from his own experiences as a judge and expertise as a lawyer, the amount the attorney should be paid. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 629 (1978). While the amount of a reasonable attorney’s fees is largely discretionary, the trial judge should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorney’s in the same area, and the amount of awards in similar cases, Linthicum v. Archambault, 379 Mass. 381, 388, 389 (1979).
The defendant also claims that the fee award was excessive and violative of Disciplinary Rule 2-106(b) of the Supreme Judicial Court. In Heller v. Silverbranch Construction Corp., the award was against a party having no “contractual relationship with the attorney involved.” In most court awarded fee cases, there is no contractual relationship between the parties involved. The status of attorney-client is a contractual relationship, and the defendant, as a stranger to the contract has no standing to complain of an alleged ethical violation, Mellen v. Whipple, 67 Mass. (1 Gray) 317 (1854); Hill v. Snell, 104 *156 Mass. 173, (1870).[2] Disciplinary Rule 2-106 would appear to be for the benefit of clients who express dissatisfaction with the fee charged by their attorneys.
The legal fees component of G.L.c. 93A judgment is paid to the plaintiff, not the plaintiffs lawyer, but, as a practical matter, the judiciál determination of what is the reasonable fee will determine what a plaintiffs lawyer in such a case will charge, Patry v. Liberty Mobilehome Sales Inc., 15 Mass. App. Ct. 701, 707 (1983).
We have reviewed the record and it supports the judge’s findings.
Report dismissed.

 940 CMR 3.15 (1) New for Used Substitution of Products, Failure to Deliver.
New for used. It is unfair and deceptive trade practice to represent, directly or indirectly, that a product is new or unused, or that any part of a product is new or unused when such is not the fact, or to misrepresent the extent of previous use thereof. It is further an unfair and deceptive trade practice for a seller to offer for sale or sell any product which is used, contains used parts; is rebuilt, remanufactured, reconditioned, or contains rebuilt, remanufactured, or reconditioned parts; or has the appearance of being new when it is not; unless prior, clear and conspicuous disclosure that such a product has been used, rebuilt, remanufactured or reconditioned, so that it contains used, rebuilt, remanufactured or reconditioned parts, is made to the buyer or prospective buyer.
940 CMR 3.16 (2) General.
Without limiting the scope of any other regulation or statute, an act or practice is a violation of Chapter 93A, Section 2 if;
(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction;

DR 2-106 Fees for Legal Services.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence, experienced in the area of the law involved, would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(6)The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.