Sherman, PJ.
This is an action for breach of the defendant’s commercial lease of a retail store in the plaintiffs’ shopping center in Peabody, Massachusetts.
Plaintiffs Charles and Samuel Rosen, as Trustees of the Retailers Realty Trust (“Rosen”), sought damages in the amount of $49,145.00 for rent, miscellaneous charges and interest allegedly owed upon the abandonment of the premises by defendant-tenant Gold Star Wholesale Nursery, Inc. (“Gold Star”).
Defendant Gold Star denied any breach of contract, and counterclaimed for Rosen’s alleged breach of contract, deceit and G.L.c. 93A violations in failing to honor the rights allegedly granted to Gold Starfor the exclusive retail sale of casual furniture and Christmas items in the plaintiff’s shopping mall.
The trial court ruled that the parties’ written lease granted no exclusive rights to Gold Star to sell certain merchandise as alleged by Gold Star in its counterclaim. The court found, however, that the course of dealings between the parties subsequent to lease execution resulted in an oral modification of the lease which accorded Gold Star such exclusive selling rights. Upon its additional finding that Rosen had breached the lease as modified, the court entered judgment for Gold Star on both Rosen’s complaint and on Count I of Gold Star’s counterclaim for breach of contract. No damages were assessed against the plaintiff, and the court dismissed Counts II and III of Gold Star’s counterclaim for fraud and unfair and deceptive practices.
The plaintiffs now claim to be aggrieved by the trial court’s findings, and rulings and by the following disposition of their request number 32:
32. As a matter of law, defendant’s contract claim must fail as the agreement defendant alleges is inconsistent with the express terms of the lease.
Allowed to the extent that the defendant’s contract claim is based on the written lease; denied to the extent that defendant’s claim is predicated upon an oral modification of the written agreement.
The reported evidence, suitably summarized for the basic issues of contract law *214 presented,[3] is as follows:
The parties executed a written lease for a three year term expiring on May 8, 1990 for Gold Star’s rental of retail space in plaintiff Rosen’s shopping mall. Article 5 of the lease restricted Gold Star’s use of the premises to:
the retail sale of all types of porch, patio and other casual furniture and accessories and related giftware and crafts, live plants and accessory product lines; full line Christmas decor and trim-a-tree product lines and accessories and related giftware items and holiday plants....
Although Gold Star had attempted to negotiate an exclusive right to sell Christmas items and casual furniture, Rosen had refused and no provision of the parties’ written lease either granted Gold Star such exclusive selling rights or bound Rosen to restrict the sale of such merchandise by other tenants in the shopping center.
Gold Star was successful, however, in negotiating certain “escape clauses” or termination rights. These included, under Article 1 of the lease, an option to terminate effective at the end of the 27th month (August 7, 1989) upon written notice by the end of the 20th month (January 7, 1989) and the payment of $20,000.00 to Rosen by May 7, 1989. Gold Star was also granted an option to extend the lease, upon the same terms and conditions except rent, for an additional seven years upon written notice to Rosen no later than February 7, 1989.
Ten months after the commencement of Gold Star’s lease, Rosen rented retail space in the same shopping mall to North American Marketing Corporation (“NAMCO”). NAMCO’s lease expressly restricted its use of the premises to
swimming pools and pool equipment and supplies, spas, ski equipment and outdoor furniture and for no other purpose provided that in no event shall no more than 25% of NAMCO’s premises be utilized for the sale of outdoor furniture.
NAMCO’s lease further provided that any unauthorized use of the premises constituted a breach by NAMCO.
The present action derives from the parties’ course of dealings between April, 1988 and December, 1989 concerning NAMCO’s sale of Christmas merchandise. In April, 1988 Rosen advised Gold Star that NAMCO’s right to sell furniture would be restricted, and that NAMCO would not be permitted to sell Christmas items as long as Gold Star remained on the premises.
In May, 1988, Rosen declined an opportunity to rent space to the Green Mirage, a company which sold the same line of goods as Gold Star, because Gold Star objected to a competitor coming into the shopping center.
By letter of September 19, 1988, Gold Star reminded Rosen of its earlier concerns that NAMCO would carry Christmas products and of Rosen’s prior statements that NAMCO’s lease prohibited the sale of such merchandise. On September 28, 1988, Rosen notified NAMCO in writing that:
The sale of Christmas goods was deliberately left out [of the NAMCO *215 lease] because of the obvious conflict with [Gold Star],... In the unlikely event that NAMCO were to attempt to set up a Christmas shop I would have to defend the position legally.
A copy of this letter was forwarded to Gold Star. NAMCO did not sell Christmas items in 1988.
Gold Star’s option to terminate the lease expired on January 7,1989.
On May 4, 1989, Gold Star exercised its option to renew the lease. Gold Star also advised Rosen that it was about to buy for its 1989 Christmas season, and sought confirmation of Rosen’s position with respect to NAMCO’s sale of Christmas merchandise.
Between May and October, 1989, Rosen’s responses to Gold Star were limited to proposing various formulas for rent under the renewed lease, and to rejecting attempts by Gold Star to introduce new lease terms, including the right to terminate upon six months notice upon the sale of Gold Star’s merchandise by competitors in the mall. No mention was made of NAMCO.
In October, 1989, Rosen wrote two letters informing NAMCO that its sale of Christmas items would constitute a breach of its lease requiring legal action by Rosen.
On November 9, 1989 Gold Star revoked its renewal of the lease (without objection by Rosen), but indicated that it would consider further discussions about a lease renewal if Rosen stopped NAMCO’s competing sales of Christmas merchandise. Rosen took no legal action against NAMCO.
NAMCO did in fact sell Christmas items during the 1989 season, most of which were identical to the items sold by Gold Star.
Gold Star failed to pay its rent for November and December, 1989. On December 15, 1989, Rosen gave Gold Star written notice that its non-payment of rent constituted a breach of the lease which Rosen was willing to waive upon receipt of Gold Star’s payment. Gold Star replied by letter dated December 26, 1989 that it had suffered “a disastrous Christmas sales season,” and that it would vacate the premises on December 31, 1989 in order to limit its losses.
Article 16.1 of the parties’ lease provides, in pertinent Part:
Landlord shall not be in default of this Lease unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event less than thirty (30) days after written notice by Tenant to Landlord and to the holder of mortgage (s) or deed (s) of trust covering the Premises ... specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of landlord’s obligation is such that more than thirty (30) days are required for performance, then Landlord shall notbe in default if Landlord commences performance within such thirty (30) day period and thereafter diligently prosecutes same to completion. In no event shall Tenant have the right to terminate this Lease as a result of Landlord’s default and Tenant)s remedy shall be limited to damages therefor.
Gold Star abandoned the premises on December 31,1989, prior to the end of the lease term.
The trial court)s extensive findings of fact included the following:
Plaintiffs’ actions and representations were made in thehopesof inducing defendant to exercise its option to renew and remain a tenant. It recognized that defendant would not do so if competitors were allowed in the shopping center.
Because of plaintiffs’ representations and actions relating to the Green *216 Mirage and NAMCO in May and September of 1988, and the fact that NAMCO did not sell Christmas items in 1988, defendant did not vacate the premises and had no reason to consider giving notice to terminate in the manner required by the lease.
Defendant did not establish by a preponderance of the evidence that its damages exceeded the money it saved by not paying its rent and common maintenance charges for the months of November, 1989 through May 8, 1989.
Plaintiffs did not violate the provisions of G.L.c. 93A or make fraudulent misrepresentations.
On the basis of such findings, the trial court ruled:
1. A written lease may be modified by a subsequent oral agreement supported by consideration.
2. The lease between plaintiffs and defendant was modified. Plaintiffs were to keep competing tenants out of the shopping center. The consideration for plaintiffs’ promises and actions designed to keep competing tenants out of the shopping center included:
A Defendant’s purchase of its Christmas inventory for the 1989 season.
B. Defendant’s notice of intent to negotiate regarding extending its lease by exercising its option and defendant’s negotiating regarding the possible exercise of its option.
C. The fact that defendant remained as a tenant and paid its rent for all of 1988 and most of 1989; and did not consider giving notice to terminate in December 1988 in the manner required by the lease.
3. Plaintiffs violated the agreement between the parties, as modified, by their failure to take legal action to prevent NAMCO from selling Christmas items in 1989.
1. It is elementary law that a written contract may be modified by a subsequent oral agreement between the parties, Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 47 (1991), supported by consideration. Cohen v. Homonoff, 311 Mass. 374, 376 (1972); Bailey v. First Realty, 305 Mass. 306, 308 (1940). Although the reported evidence in this case would have warranted a contrary determination, the trial court’s finding of the parties’ oral modification of their lease to include exclusive selling rights for Gold Star was not “plainly wrong.” Larabee v. Potvin Lumber Co., 390 Mass. 636, 643 (1983). There was evidence warranting the inference that Rosen granted exclusive selling rights in 1988 to Gold Star in return for Gold Star’s relinquishment of its option to terminate the lease.
2. Rosen contends that Gold Star’s failure to comply with Article 16.1, which required written notice of landlord’s default, should have precluded any finding for Gold Star on its counterclaim for Rosen’s breach of the parties’ modified lease. It is clear that Article 16.1 remained binding on the parties. Awritten lease may be validly amended by oral agreement only as to those matters which do not come within the Statute of Frauds. Loven v. Rose, 302 Mass. 379, 381 (1939). The reported evidence is devoid of any suggestion that the parties herein modified their original lease in any *217 manner otherthan the addition of Gold Star’s rights on the sale of Christmas items and Rosen’s obligation to restrict other tenants’ competing sales. As such oral agreement entailed the alteration of only one term of the original lease, it is deemed a mere modification of such lease not governed by the Statute of Frauds. Johnston v. Holiday Inns, Inc., 565 F.2d 790 (1st Cir. 1972); Cf. Rosenfield v. Standard Bottling & Extract Co., 232 Mass. 239 (1919).
Gold Star’s failure to submit a formal notice in strict compliance with Article 16.1 did not preclude its recovery of damages for Rosen’s breach of the parties’ modified lease. Construing Article 16.1 on the basis of justice, common sense and the probable intent of the parties, Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964), it is obvious that this contract notice provision was designed not only to protect Rosen from any surprise assertion of an unfounded claim of breach by Gold Star, but also to afford Rosen a reasonable opportunity to remedy any failure of performance. Given such purposes, Gold Star may be deemed, as a practical matter, to have satisfied the provisions of Article 16.1 by its constant written and oral reminders to Rosen regarding NAMCO’s intended and actual sales of Christmas items despite Rosen’s reassurances that such competing sales would be prohibited.
3. In any event, the trial court’s findings and rulings indicate that Gold Star’s counterclaim for Rosen’s breach of the parties’ subsequent oral agreement was not necessarily dependent on Gold Star’s technical compliance with terms of the written lease. Although not characterized as such, the court’s enumeration of instances of Gold Star’s reliance upon Rosen’s representations and conduct clearly constituted an application by the court of the theory of promissory estoppel as an alternative basis for the enforcement of the parties’ implied agreement. The essence of such theory is reliance[4] which has been recognized in this Commonwealth as an independent basis for an enforceable promise. McAndrew v. School Committee of Cambridge, 20 Mass. App. Ct. 356, 363 (1988). RESTATEMENT (SECOND) OF CONTRACTS, Section 90(1) (1981) provides:
Apromise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee... which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
The trial court’s finding for Gold Star on this basis was not clearly erroneous in view of the reported evidence that Rosen promised to restrict the sales of Gold Star’s competitors to induce Gold Star to continue its tenancy beyond the Article 1 termination date, and that Gold Star elected not to exercise its option to terminate in reliance upon such promise.
4. On the basis of the foregoing, we affirm the trial court’s finding for Gold Star on Count I of its counterclaim. As Gold Star did not request a report to this Division, the court’s finding for Rosen on Counts II and III of the counterclaim are to stand.
The court’s judgment for Gold Star on Rosen’s complaint must, however, be vacated. Nothing in the reported evidence or in the trial court’s findings suggests that the parties’ oral agreement afforded Gold Star the right to terminate the lease, or eliminated that portion of Article 16.1 which expressly prohibited Gold Star’s termination. Gold Star remained, therefore, liable for all unpaid rents and charges through the remainder of the lease term. See generally, SFP, Inc. v. Hunneman & Co., 1992 *218 Mass. App. Div. 141. The trial court’s finding of fact that Gold Star’s counterclaim damages did not exceed the amounts sought by Rosen in its complaint did notaddress the dispositive question of whether Gold Star’s damages equaled the amount of Rosen’s claim.
Accordingly, the trial court’s judgment for Gold Star on Rosen’s complaint and on Count I of its counterclaim is hereby vacated. This case is returned to the trial court for a hearing on the assessment of both parties’ damages. Judgment is then to be entered for Rosen on its complaint, and for Gold Star on Count I of its counterclaim in the amounts of damages assessed by the court. The court’s judgment for Rosen on Counts II and III of the counterclaim is to stand. So ordered.

The reportto this Division is atwo hundred and fifty page compendium of largely extraneous matters, including copies of leases to other Rosen tenants, rent receipts, ledger entries, informal jottings made by the parties from telephone conversations, newspaper advertisements and more. The overwhelming portion of this material is either irrelevant to the presentation of the narrow issues raised on this appeal, see generally, Berninger v. Small, 1986 Mass. App. Div. 87, 88; Kaps, Inc. v. Sherman, 1983 Mass. App. Div. 24, 26, or is summarized elsewhere. Conversely, other documents pertinent to this Division’s understanding of the trial court’s action, including the parties’ requests for rulings and post-trial motions, were inexplicably omitted. See generally, Brooks v. Hautala, 1984 Mass. App. Div. 154, 254-255.

 Although the principles of promissory estoppel, as embodied in Section 90(1) of the RESTATEMENT (SECOND) OF CONTRACTS (1981), are applied in this Commonwealth to achieve equitable results, see Cambridgeport Savings Bank v. Boersner, 413 Mass. 432, 442 (1992), the phrase “promissory estoppel” is not utilized. Loranger Construc. Corp. v. E. F. Hauserman Co., 376 Mass. 757, 761 (1978).