On September 30, 1994, this Court entered its “findings, rulings and judgment,” wherein it found that the defendant American Honda Motor Co., Inc. had arbitrarily decided to establish another dealership within plaintiffs relevant market area, in violation of G.L.c. 93B, §4(3)(1), and entered judgment for the plaintiff on Count I of the complaint [2 Mass. L. Rptr. No. 28, 571 (November 14, 1994)].[2] The plaintiff then moved for an award of attorney fees and costs pursuant to G.L.c. 93B, §12(A). As a result of a preliminary hearing in regard to that motion, the Court, on December 21, 1994, amended its September 30, 1994 “Findings, Rulings and Judgment” to provide that defendant’s conduct was also found to have been in violation of G.L.c. 93B, §§4(1) and 4(4)(1) and ruled that the showing of at least some damage or injury is a prerequisite to proof of a violation of c. 93B and therefore a prerequisite to recovery of attorney fees and costs under §12A [3 Mass. L. Rptr. No. 5, 112 (January 30, 1995)]. The Court went on to order that, at the hearing on plaintiffs motion for an award of attorneys fees, “plaintiff shall first be given an opportunity to offer one or more witnesses to establish the fact that plaintiff was damaged (i.e., his business injured). There shall be no need to establish a specific dollar amount of such damages, but plaintiff must establish, as a prerequisite to the award of attorney fees, that plaintiffs business was injured in some manner, (e.g., loss ofvaluable executive time diverted by reason of defendant’s wrongful conduct).” The Court further ordered that “any necessary document production and depositions are to be completed” before the hearing on plaintiffs motion.
The Court has now heard testimony and received exhibits (including, by agreement, a number of affidavits) at the evidentiary hearing on September 28, 1995 with regard to plaintiffs said motion. Based upon all of the credible evidence, the Court makes the following findings, rulings and order:
At the hearing on attorney fees and costs, plaintiff s chief executive, Barry Lundgren, testified that plaintiffs business had been damaged by defendant’s actions in a number of respects, including diversion of the company’s capital (which had been needed to establish plaintiffs new dealership) and diversion of *478 valuable executive time and energy from the business. The Court credits this testimony, and finds that plaintiff has established actual (albeit unquantified) damages, which are sufficient to support an award of attorney fees and costs in this case. Cf. Jet Line Services, Inc. v. American Employer’s Ins. Co., 404 Mass. 706, 718-19 (1989).
In determining the amount of reasonable attorney fees and costs in this case, the Court will be guided by cases decided under the analogous provisions of c. 93A.[3] The SJC has set forth a multipart test to determine the objective worth of attorneys’ services:
[T]he judge ... should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979); Homsi v. C.H. Babb Co., 10 Mass.App.Ct. 474, 481-82 (1980); George C. Pickering, Inc. v. Blue Hill Lincoln-Mercury, Inc., 1984 Mass. App. Div. 145, 155 (1984).
As long as the standard of reasonableness is met, the amount of the award of attorneys fees by the trial judge is “largely discretionary.” Linthicum, supra, at 388. The reviewing court will ordinarily give deference to the trial judge because the trial judge “has ample opportunity to acquire first-hand knowledge of all. . . factors” relevant to a determination of the fee. A trial judge’s award with respect to attorneys fees is, of course, subject to review where the award reveals “arbitrariness or injustice” or where it is “incommensurate with an objective evaluation of the services performed.” Pickering, supra, at 155.
In the case at bar, the defendant conceded at the hearing that plaintiffs counsel was reputable and able, and that their hourly rates were reasonable. Defendant did, however, question the reasonableness of the time and labor which was expended. In that regard, defendant pointed out that the case had proceeded to trial and was successful on only one of several counts of the complaint (c.93B) and that, even with respect to that count, much time and labor was expended in regard to the so-called “bootlegging” allegations, which did not directly pertain to the successful c.93B count. Thus, defendant’s attorney fees expert, Owen Todd, opined thatsome $120,000 of time charges and $6,750 of expenses, which he judged to have been attributable to that aspect of the case, should be excluded from the award.
This Court, however, having presided at the September, 1994 trial, finds that plaintiffs counsel reasonably expended time on developing the “bootlegging” allegations, which were logically related and factually intertwined into the other aspects of the c.93B count. Plaintiff reasonably contended that the sale and servicing of Honda cars by an Acura dealership within plaintiffs market area, constituted a de Jacto establishment of an additional Honda dealer within plaintiffs market area, and hence was “arbitrary” within the meaning of C.93B. See: Heritage Jeep-Eagle, Inc. v. Chrysler Corp.. et al., 39 Mass.App.Ct.—[decided September 22, 1995].
Moreover, the Supreme Judicial Court has recognized, in considering the scope and extent of c.93B, that “(y]et another technique with potentialities of unfairness is the granting of new franchises near established ones: having invested in his dealership, a dealer who has displeased the manufacturer, or who simply appears to be dispensable, finds his business turned into a losing venture overnight by the award of a new franchise around the corner, and, it may be, without any practical benefit to, or, indeed, with negative effects on, the buying public.” Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc., 376 Mass. 313, 320 (1978) (emphasis added).
This Court found, following trial, on September 24, 1994, that “the plaintiff had ‘displeased’ American Honda by its insistence that an Acura dealer was bootlegging Honda cars (i.e., selling Hondas from an Acura dealership) within plaintiffs market area, and by plaintiffs refusal to allow American Honda to condition its approval of plaintiffs relocation upon a waiver by plaintiff of any protest to American Honda’s proposed new dealership in Westborough” (September 30, 1994 Findings, Rulings and Judgment, pp. 8-9). It is thus clear that the bootlegging allegations were part and parcel of Honda’s displeasure with plaintiff, which was a reason for Honda’s unfair and arbitrary treatment of plaintiff in violation of c. 93B.
Accordingly, the Court finds that plaintiffs bootlegging claims against the defendants were factually and legally intertwined with the c.93B count against American Honda, so that the bootlegging claims should not be apportioned, or the fee reduced, as a result of counsel’s work on such claims. See Morse v. Mutual Federal Sav. & Loan Assoc., 536 F.Supp. 1271, 1283 (1982, DC Mass) (“where some particular matter gave rise to common law as well as 93A liability, this should result in no apportionment or reduction of charges”); DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 106 (1983) (court rejected argument that attorneys fees should be limited solely to c. 93A counts since separate counts “represent various elements of damage arising from a single chain of events” which were recoverable under c. 93A); Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 682 (1986) (tor-tious interference claim was so “intertwined factually with the merits of the claim under c. 93A that the judge would not have been required to segregate out more than a nominal portion of total hours expended... in arriving at an appropriate attorneys fee”); Simon v. Solomon, 385 Mass. 91, 111 (1982) (similar analysis under a different statute).
Defendant also attacks plaintiffs requested fee award on the ground that more attorneys and parale *479 gals than were necessary were employed on particular aspects of the case, and points to several instances (e.g., 40 hours spent in drafting the complaint) which were excessive. The Court has wide discretion in determining what expenditure of time was reasonable. Dorgun v. Loukas, 19 Mass.App.Ct. 959, 960-61 (1985); Computer Systems Engineering, Inc. v. Grantel Corp., 571 F.Supp. 1379, 1381 (D. Mass. 1983).
The Court is cognizant that the preparation and trial of a somewhat complex commercial case such as this entails a magnitude of legal work, some of which is invariably and perhaps unavoidably nonproductive and duplicative. The Court is also aware that this case was filed in 1992, and was tried to conclusion in 1994, so that the litigation was not particularly extended (in comparison, for instance, to the trial of an antitrust case, which frequently entails many years of discovery and weeks and sometimes months of actual trial). In consideration of all the above, the Court finds that the total number of hours was excessive for the type, length and complexity of this case by approximately 30%, so that a reasonable expenditure of legal time would have been about 905.28 fewer hours than the 3,017.60 hours expended, which would have resulted in a total expenditure of 2,112.32 hours. When such hours are multiplied by defendant’s admittedly reasonable average hourly fee of $161.63, there results a reasonable attorney fee charge of $341,414.28, which the Court concludes is a reasonable award of attorney fees in this case.[4]
Based on all of the evidence, the Court also finds that plaintiffs direct out-of-pocket expenses ($90,323.88) were primarily for expert witness fees and were hence necessaiy and reasonable, see Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), but the evidence provides no support for any of the other purported costs. Accordingly, the Court finds the total award of reasonable attorney fees and costs to be in the sum of $431,738.16.
ORDER
It is ordered that the defendant American Honda Motor Co., Inc. shall, within thirty days of receipt of this order, pay to the plaintiff the sum of $431,738.16 for attorney fees and costs in this action.

As the Court noted in its findings, the counts of the complaint other than the c. 93B count and the question of any damages “had been previously bifurcated and reserved for a subsequent trial, if necessary.”

Like c. 93A, §§9 and 11, c. 93B, §12A provides for an award of “reasonable attorney fees and costs.”

This compares favorably with attorney fees of $309,000 which Honda paid just to its successor counsel (after the withdrawal of its original counsel) in this case. Honda’s total attorney fees paid in this case exceeded $670,000.